Argued March 19, decided June 23, rehearing denied October 20, 1908.

DE BOW v. WOLLENBERG.

[96 Pac. 536; 97 Pac. 717.]

DEPOSITIONS—SUPPRESSION—MOTION—TIME TO MAKE.

1. Under Section 408, B. & C. Comp., providing that objections to depositions, other than objections based on the incompetency of the witness and the testimony, shall be taken by exceptions filed within 10 days from the closing of the testimony and before the first day of the next term; a motion to suppress a deposition on the ground that it was not taken before the referee

appointed by the court, that it did not appear that the witness was sworn, that the commission to take the testimony was not made a part of the record, etc., comes too late when not made in the time specified by the statute.

DEEDS—DELIVERY—TIME OF TAKING EFFECT.

2. Where a deed is executed and placed in the hands of a third person for delivery to the grantee without the grantor reserving to himself any control over it, and it is delivered, the title passes to the grantee at the time of the last delivery, though not delivered until after the grantor's death, and, if necessary to protect the grantee, the title will relate back to the date of the the first delivery.

ESCROWS—DELIVERY—CONDITION.

3. A grantor, without any previous understanding with the grantee, deposited the deed with a third person for delivery when the grantee paid to a person named, a specified sum. The deed contained a condition that the specified sum should be paid to the person named. The grantor died before the grantee assented to the condition. *Held,* that the tender of the deed through the third person for delivery on compliance with the condition was an offer which the grantor could withdraw at any time before acceptance by the grantee, and the grantee could not after the death of the grantor accept and perform the condition and demand delivery.

DEEDS—ASSENT OF PARTIES—NECESSITY.

4. The binding force of a deed depends upon the mutual assent of the parties to it, without which there can be no delivery.

ESCROWS—DELIVERY—CONDITIONS.

5. A grantor, when depositing a deed with a third person for delivery to a grantee, may, without awaiting the grantee's consent, annex such conditions thereto as he sees fit, and the grantee is entitled to a delivery only on compliance with the conditions.

DEEDS—DELIVERY.

6. While no particular formalities are essential to constitute a proper delivery of a deed, it is necessary that a grantor should expressly or impliedly consent thereto.

WILLS—NATURE OF INSTRUMENT.

7. Instruments in the form of deeds conveying real estate and a bill of sale conveying personalty on specified conditions, and not intended to operate as a will, cannot be construed to be testamentary in character.

ESCROWS—DELIVERY.

8. A deed, providing for a payment by the grantee as a condition precedent to delivery, was deposited with a third person for delivery on the grantee complying with the condition. Before acceptance by the grantee of the condition, the grantor died. *Held,* that the third person, until acceptance by the grantee of the condition, was the agent of the grantor only, and, as his agency was not coupled with an interest, it ceased on the death of the grantor, and the third person could not thereafter make a delivery to the grantee.

CANCELLATION OF INSTRUMENTS—TENDER OF CONSIDERATION RECEIVED —NECESSARY.

9. Where parties seeking to set aside deeds and a bill of sale on the ground of fraud were entitled to the money received in part payment on account of their right to a distributive share in an estate, and defendants could at most only claim that the money had been prematurely advanced to such parties, the failure to offer to return the money did not defeat the right to maintain the action.

SAME.

10. Where a grantee voluntarily paid a specified sum to a third person to procure possession of deeds and a bill of sale, heirs of the grantor, who sued to set aside the instruments on the ground of fraud, were not required to return, or offer to return, to the grantee the money paid.

SAME—LACHES.

11. A suit was brought in January, 1902, to set aside deeds and a bill of sale executed in October, 1894, and received by the grantee and recorded in December, 1895. The claim of the grantee to hold the property absolutely, instead of complying with the trust under which the instruments were executed, was not brought to the attention of plaintiffs until within a short time before the commencement of the suit, and such claim had not existed for more than 2½ years before that time. *Held*, that the right to maintain the suit was not barred by laches.

EXECUTORS AND ADMINISTRATORS—ACTIONS—LIABILITY FOR COSTS.

12. A personal representative, who sues or defends in any proceeding, which he can bring or defend in such capacity, is not personally liable for the costs on his being defeated in the contest, unless it clearly appears that he is not acting in good faith, or that he intentionally subjected the opposition to expenses additional to what otherwise would have been necessary to protect his rights in the controversy, or that the suit is wanton and groundless.

EXECUTORS AND ADMINISTRATORS—ACTIONS—LIABILITY FOR COSTS.

13. Where, in a suit to set aside deeds and a bill of sale brought against a defendant in his representative capacity as administrator, it appears that defendant took the instruments with actual knowledge of the purpose for which they were given, knowing that they were intended to convey title in trust only, and that he repudiated the trust, the court, in taxing costs against him individually on decreeing a cancellation of the instruments, did not abuse its discretion.

APPEAL AND ERROR—DISCRETION OF COURT—COSTS.

14. The taxation of costs are reviewable only for abuse of discretion of the. trial court.

SAME.

15. In a suit to set aside deeds and a bill of sale, brought against a defendant in his capacity as administrator, who was a proper party, and who in good faith unsuccessfully defended the action to protect the interests of the estate, he was improperly charged with the costs in his individual cacacity.

APPEAL AND ERROR—DISPOSITION OF CAUSE—AFFIRMANCE—EFFECT ON FINDINGS OF TRIAL COURT.

16. The affirmance of the trial court's decree does not necessarily sustain all of its findings of fact.

DESCENT AND DISTRIBUTION — NATURE AND COURSE — REALTY AND PERSONALTY.

17. Under Section 1147, B. & C. Comp., giving the executor or administrator the possession and control of all of decedent's property until administration is completed, and Section 1221, providing that decedent's real property is the property of the heirs or devisees, subject to the possession of the executor or administrator to satisfy claims against the estate, and upon the determination of the administration the unappropriated part is discharged from such possession without any order therefor, the title to realty passes directly to the heirs as tenants in common, subject to the administrator's possession to pay debts, but the personal property goes to the administrator by operation of law.

COURTS—PROBATE COURTS—COUNTY COURTS—ADMINISTRATION OF DECE-
     DENT'S ESTATE—PERSONAL PROPERTY

18. The county court has exclusive jurisdiction of the personal property of a decedent's estate and of the determination of what constitutes the personal estate and of the respective shares of the heirs therein, and such matters cannot be determined in a suit by heirs to set aside a conveyance by decedent.

From Clackamas: THOMAS A. MCBRIDE, Judge.

Statement by MR. COMMISSIONER KING.

This is a suit by Rachel De Bow, Sura Hartbrod, Clara Marks as administratrix of the estate of Adolph Marks, deceased, and Meier Marks, to set aside, on the ground of fraud, two deeds and a bill of sale to real and personal property in Douglas County, Oregon, claimed to have been executed by Zulkind·Krotki to Herman Marks.

The complaint, in substance, states: That Rachel De Bow, Sura Hartbrod, Adolph Marks, and Meier Marks, and the defendants Saul Marks and Asher Marks, testator of the defendant Herman Marks, were brothers and sisters, lawful children, and the only heirs of Zulkind Krotki, of Dobrzhyn, Russia; that Zulkind Krotki, Shoel Krotki, Shmul Krotki, and Myndel Krotki were brothers and sisters and the only children and heirs of Marcus Krotki, late of Dobrzhyn, Russia; that Shmul Krotki romoved to Douglas County, Oregon, in 1854, and there engaged in business under the name of "Samuel Marks"; that Samuel Marks and defendant H. Wollenberg were engaged in business in Canyonville and Roseburg in said county, under the name of S. Marks and H. Wollenberg; that Samuel Marks engaged in business also with Asher Marks at Roseburg under the firm name of S. Marks & Co.; that the partnerships named continued until Samuel Marks' death, which occurred on September. 20, 1893; that at the time of his death the firm of S. Marks & H. Wollenberg had acquired, in the course of its business, a large amount of real and personal property, consisting of money, county warrants, building and loan stock, cattle and· sheep, and

unsecured promissory notes, valued at more than $36,-
585.20, promissory notes, secured by mortgages on
realty, of the value of over $143,855.48, and 3,000
acres of land of the value of over $30,000; that the
aggregate value of the firm's entire property was over
$210,440.68; that the firm of S. Marks & Co., at the
time of Samuel Marks' death, in the course of its busi-
ness, had acquired, was the owner, and in possession
of property consisting of merchandise of not less than
$12,442.35, book accounts, $22,777.85, promissory notes
and mortgages on realty, $73,413.11, 9,000 acres of land,
$90,000, timber lands in Coos County, $13,210, and city
lots and buildings in Roseburg of the value of $32,000,
aggregating in all $243,843.31; that Samuel Marks had
acquired, and at the time of his death was the owner
and in possession of, individual property of the value
of $7,222.90, together with the ownership of one-half
interest in the property of each of said firms; that his
interest or share therein, after the payment of all debts,
together with his individual property, exceeded in value
$159,000; that Samuel Marks died intestate in Douglas
County, Oregon, leaving his said brothers, Zulkind
Krotki and Shoel Krotki, and his sister, Myndel Krotki,
all of whom were then living, his sole and only heirs at
law; that Asher Marks was duly appointed adminis-
trator of the partnership estate of S. Marks & Co.,
October 9, 1893, and duly qualified as such, taking pos-
session and custody of all the property of the estate,
and continued to act as administrator thereof until his
own death, August 31, 1899; that on September 29,
1899, defendant H. Wollenberg was duly appointed ad-
ministrator *de bonis non* of the estate of S. Marks &
Co., and on October 2d following was duly appointed
administrator of the estate of S. Marks & H. Wollen-
berg, qualified as such, and took into his custody and
possession all of the property of said estates, and has
at all times since continued to act as such administrator

of each of the estates still pending and unsettled in the county court of Douglas County, and as such administrator, Wollenberg has also taken into custody and possession all of the individual property of Samuel Marks, and is assuming to administer upon the same; that Zulkind Krotki, at Dobrzhyn, Russia, received information of the death of Samuel Marks on October 23, 1893, at which time he was infirm both in body and mind, being 91 years old, and unable personally to attend to the settlement of the estate of Samuel Marks or to look after his interest or share therein, and anticipating his own demise before any distribution thereof could be effected, and ignorant of the laws of Oregon and the practice in settlement and distribution of estates therein, and unable to speak, read, or write the English language, but being desirous of arranging his affairs so that each of his children named would obtain an equal share of the proceeds of his interest in the estate, after the payment of $1,000, which he had decided to give to Daniel Aurbock, concluded to and did execute a power of attorney to, and in favor of, his children jointly, and delivered it to his eldest daughter, Rachel De Bow, to bring to the United States, to enable all six of his heirs, there designated to act in concert, with full power to collect his interest, and with instructions that, after first paying his son-in-law, Aurbock, $1,000, they should divide the remainder equally between themselves; that Rachel De Bow brought the power of attorney to the United States for the purpose of placing it on record and in order to distribute the estate; that soon after her arrival in Portland, in March, 1894, she was met by Asher Marks, to whom she explained her father's purpose, whereupon he, falsely representing to her that the power of attorney was insufficient and could not be used to effect her father's purpose, prevailed upon her to surrender it to him and to return at once to her home in Russia for the purpose of persuading her father to

execute to Herman Marks, in place of the power of at-
torney, two deeds and a bill of sale for his entire one-
third interest in the estate of Samuel Marks, upon his
assurance that these instruments were necessary and
proper to enable him to effect the desired purpose; that
he promised upon their return to him, duly executed
and by means thereof, speedily to adjust, settle, and col-
lect their father's one-third interest, and equally to
divide the estate between the six children, the first ad-
vancement to be to Rachel De Bow of the sum of $1,000,
as an advancement on her share of the estate out of
which she was to satisfy Aurbock's claim; that the
deeds and bill of sale recited "a consideration of the
sum of $1.00 and other valuable consideration to him
paid by the defendant, Herman Marks," conveying his
one-third interest in the Samuel Marks estate, and were
prepared by Asher Marks and delivered to Rachel De
Bow in the manner and for the purpose indicated, which
were intended by Asher Marks not to be used for the
purpose of accomplishing the father's intention, but
fraudulently to secure such interest for himself, to the
exclusion of the other five children, and to prevent the
division of said interests between them, as intended by
their father, and thereafter repudiated their several
claims to share therein under said deeds and bill of sale;
that these instruments were made not to Asher Marks,
but to his nephew, Herman Marks, with whom he had
arranged to accept them and hold the naked legal title
to the property therein in trust for the heirs of Zulkind
Krotki in equal shares and proportions, to all of which
Herman Marks had assented and agreed; that said
deeds and bill of sale were received by Asher Marks on
December 26, 1895, and duly filed and recorded, remain-
ing in his possession and custody until his death, Au-
gust 31, 1899; that Asher Marks left a will by which,
with the exception of some small legacies, he bequeathed
and demised all his estate to Herman Marks, naming

him as his executor, which will, on September 30, 1899, was probated and letters testamentary issued to Herman Marks, whereupon he took all the property belonging to, or claimed by, the individual estate of Asher Marks into possession and custody as such executor, and still holds the same, the administration of which is still pending; that at the time of the execution of the deeds and bill of sale, Zulkind Krotki was 92 years old and mentally incompetent to execute the same, or properly to understand the purport thereof, all of which Asher Marks had knowledge and notice, together with full knowledge and notice of the manner in which it was intended the estate should be distributed; that Zulkind Krotki died intestate without having made, or attempted to make, any other disposition of his property than as stated; that defendant Herman Marks now asserts and claims that, under and by virtue of said deeds and bill of sale, he is the absolute owner of, and entitled to receive, the whole of the one-third interest of Zulkind Krotki in the estate of Samuel Marks, deceased, for his own sole use and benefit; that the deeds and bill of sale executed and delivered by Zulkind Krotki were without consideration from Asher Marks or Herman Marks, all of which at all times Herman Marks had full knowledge and notice, including the intention and purpose of Asher Marks to defraud the other heirs of Zulkind Krotki.

The complaint concludes with the prayer:

"Wherefore the plaintiffs pray that said deed and said bill of sale from said Zulkind Krotki to the defendant Herman Marks, and each of them, may be declared and decreed inoperative, null, and void, and that the plaintiffs Rachel De Bow, Sura Hartbrod, Meier Marks, Adolph Marks, and the defendant Saul Marks be declared and decreed to be the owners of five-sixths of the one-third share or interest in said estate of Samuel Marks, formerly belonging to said Zulkind Krotki, and that each of them be declared and decreed to be the

owner of one-sixth of said one-third share or interest and entitled to receive the same or its equivalent proceeds from the defendant H. Wollenberg, administrator of said partnership estates, in due course of distribution, and that the defendant Herman Marks be enjoined from receiving, demanding, or claiming any greater right or interest therein or thereto than one-sixth thereof, and that said deed and bill of sale, and each of them, be decreed to be given up and canceled, and the record thereof canceled; that plaintiffs may have judgment for their costs and disbursements; and that plaintiff may have such other and further relief as may be just and equitable."

Defendant Herman Marks answers, specifically denying on information and belief each of the facts alleged concerning the transaction, and denies specifically that Asher Marks had any notice of Zulkind Krotki's mental condition, or knew that it was the latter's intention or purpose to have his one-third share or interest in the estate of Samuel Marks, less the sum of $1,000 intended for Aurbock, equally distributed, or to be in any manner divided among any of his children or heirs, or that such was the intention and purpose of Zulkind Krotki in executing the power of attorney mentioned, and affirmatively avers: That the suit was not commenced within six years from the date of the execution and delivery of the bill of sale, by reason of which it is alleged that the cause of action relative to the personal property is barred; that the deeds and the bill of sale were executed in September, 1894, and, although plaintiffs had full knowledge of all the transactions, not until the filing of the complaint, January 10, 1902, did they make any claim to the property therein described, by reason of which plaintiffs are guilty of laches, and the cause of suit relied upon is stale, and plaintiffs should not be permitted to present the same in a court of equity; that on September 13, 1894, for the sum of $4,700, in United States gold coin, by him paid to Zulkind Krotki, the latter made, executed, and delivered to him his two

certain deeds and bill of sale, whereby the grantor named conveyed all of his right, title, and interest in and to the real and personal property of which the said Samuel Marks died seised in the State of Oregon; that the sum of $4,700 was at the time of the execution of the deeds the reasonable value of the interest of the grantor in and to the property, which deeds were made to him for the valuable consideration named; and that he (Herman Marks) was a *bona fide* purchaser thereof in good faith, without knowledge of the alleged fraudulent act or acts on the part of Asher Marks.

H. Wollenberg answers with denials of similar import to those of Herman Marks, affirmatively averring, in substance, that by reason of claims against the estate aggregating $70,000 and the property thereof consisting principally of lands, for which he could not find purchasers, he was "therefore unable to state whether, after the payment of the claims allowed against said estate and the expenses of administration thereof, any property or money will remain in his hands for distribution among the heirs, distributees, or legal representatives of said estates, or either of them."

Replies were filed, placing the cause at issue, and the cause was referred to Ira B. Riddell as referee, to report the testimony, which was taken by him and filed February 3, 1905. After all testimony and depositions were filed, it was, on March 22, 1905, by mutual agreement, transferred to the Circuit Court of Clackamas County for trial. On April 17th, following, defendants moved to suppress the deposition of Rachel De Bow, a witness for plaintiffs, on the ground that it was not taken before the referee appointed by the court; that it did not appear in the deposition that the witness was sworn; that it affirmatively appears from the certificate accompanying the deposition that a notary public, under the laws of Russia, where the testimony was taken, has no authority to administer an oath to a witness; that

the commission, if it was issued, to take the testimony, is not returned and made a part of the record in the cause; that there is nothing in the record to show any authority for the taking thereof before the officer in the presence of whom it purports to have been taken; and that it appears from the deposition that it purports to have been upon written interrogatories and cross-interrogatories, prepared and sent to Russia for the purpose of obtaining the testimony of the witness, but that the original list of interrogatories is not on file, and the record fails to show what objections, if any, were made, either to the interrogatories direct or cross, submitted to the witness—which motion was overruled. After argument the cause was submitted, resulting in findings of fact by the court sustaining the averments in the complaint, upon which a decree was entered for plaintiffs, as follows:

"It is hereby ordered, adjudged, and decreed by the court that the instrument in writing dated September 13, 1894, purporting to be a conveyance of certain lands in Douglas County, Oregon, from Zulkind Krotki to Herman Marks, recorded December 26, 1895, on page 455 of volume 33 of Deed Records of said Douglas County, and in evidence in this case marked 'Defendants' Exhibit No. 1,' the instrument in writing dated September 13, 1894, purporting to be a conveyance of certain lands in Coos County, Oregon, from Zulkind Krotki to Herman Marks, recorded December 29, 1895, on page 226 of Book 28 of Deed Records of said Coos County, and in evidence in this case, marked 'Defendants' Exhibit No. 2,' and the instrument in writing dated September 13, 1894, purporting to be a conveyance from Zulkind Krotki to Herman Marks of all his right, title, and interest of whatsoever nature in certain mortgages, and all other property formerly owned by S. Marks & Co., and S. Marks & Hyman Wollenberg, and all the interest therein belonging to the estate of S. Marks, deceased, filed with the county clerk of said Douglas County on January 3, 1896, and in evidence here, marked 'Defendants' Exhibit No. 3,' being the same deeds and bill of sale alleged and referred to in

the pleadings, evidence, and findings herein, and each of said instruments be and hereby is annulled and set aside, and declared void and of no force or effect whatsoever, and directed to be canceled by the clerk of this court, and the record thereof canceled and discharged by the county clerks of said Douglas and Coos counties; that Samuel Marks was at the time of his death, on September 22, 1893, an equal partner with Asher Marks in the firm of S. Marks & Co., and with H. Wollenberg in the firm of Samuel Marks & H. Wollenberg, and the owner in his own individual right of an undivided one-half interest in the business and property of each of said firms, and neither Asher Marks nor the firm of S. Marks & Co. was then a partner in said firm of Samuel Marks & H. Wollenberg, or owned any interest in the business or property thereof; that the interest of Samuel Marks in the property of S. Marks & Co., and Samuel Marks & H. Wollenberg at the time of his death on September 22, 1893, was of the reasonable value of over $100,000 above all indebtedness and legal charges against the same; that each of the plaintiffs is the owner of an undivided one-eighteenth interest in the said estate of Samuel Marks, deceased, and entitled to an accounting of the same from the defendants herein, both in their official and individual capacities alleged in the complaint, in any court having jurisdiction, and to recover the balance found due on such accounting; and that the plaintiffs have judgment against the defendants Herman Marks and H. Wollenberg for their costs and disbursements in this suit, taxed at $441.15, and execution issue therefor."

From this decree defendants appeal.

AFFIRMED: MODIFIED AS TO COSTS.

For appellants there was a brief over the names of *Messrs. Fullerton & Orcutt, Mr. Frank W. Benson* and *Mr. William P. Lord,* with oral arguments by *Mr. Lord* and *Mr. Fullerton.*

For respondents there was a brief and oral arguments by *Mr. Commodore S. Jackson* and *Mr. Edward B. Watson.*

Opinion by Mr. Commissioner King.

1. The first point demanding attention relates to the correctness of the ruling of the court in denying the motion to suppress the deposition of Rachel De Bow. It appears that the deposition alluded to was returned, opened, and filed June 19, 1904, and the taking of the testimony before the referee was closed on November 18th, following; that about two months later, by order of the court, the cause was transferred to Clackamas County for final hearing on the evidence taken, the entire record of which, including the depositions, was filed in the circuit court of that county on March 22, 1905. The motion to suppress was filed April 17th, following, while the cause was heard in May, 1905. The method provided by our Code, by which objections may be made to depositions taken and offered in evidence in suits in equity, reads:

"Upon the trial either party may object to the reading of a deposition or any part thereof, when offered by the other, because the witness is incompetent, or the testimony is so, or irrelevant, and not otherwise. All other objections to depositions shall be taken by written exceptions filed with the clerk within ten days from the closing of the testimony, and before the first day of the term next following thereto, and may be heard and decided by the court or judge thereof at any time thereafter before the trial of the suit": Section 408, B. & C. Comp.

The objections made to the depositions do not go to the competency of the witness or to the competency or relevancy of her testimony to the matter in issue, by reason of which the first paragraph of this section of the Code can have no application to the points urged. The objections not having been made within 10 days from the closing of the testimony, as required by the section of the statute quoted, it is clear that the motion came too late, and the denial thereof was properly made.

2. Considering the case upon its merits, the first question with which we are confronted relates to the suffi-

ciency of the deeds and bill of sale from Zulkind Krotki to Herman Marks, upon which the defendants rely. The execution of the instruments given by Krotki and receipt thereof by Marks is not questioned, nor is it denied that Marks ultimately paid $1,000 thereon, as provided in the deeds, but urged that the instruments were executed through fraud imposed upon the grantor; that he was too old and infirm properly to understand the result of the transaction; that it was intended by him not to convey the legal title, but given for the purpose of enabling the heirs to more conveniently settle up the estate of his brother, Shmul Krotki, deceased, known in this country and in this case as "Samuel Marks"; and that the deeds in the form given, with the provision therein referring to the payment of the sum of money to Aurbock, not having been delivered to the grantee, and the additional condition named therein not having been accepted by the grantee until after the grantor's death, were void, by reason of which the estate must be distributed among the heirs in accordance with the laws of Oregon, as if none of the instruments had been executed. Under the conclusion here reached, the determination of only the last point suggested becomes necessary.

It is practically conceded by appellants that, after Zulkind Krotki learned of the death of his brother, Samuel Marks, he gave to his daughter, Rachel De Bow, what purported to be a power of attorney, and sent her and her brother to this country for the purpose of settling up the estate and distributing the proceeds among all of his children, share and share alike; that Asher Marks met Mrs. De Bow at Portland, but, finding the power of attorney not to be in the form desired, asked her to return to her home in Russia and procure deeds to the realty and a bill of sale to the personalty, to which he may be entitled from the estate, to which she

52 OR.—— 14

acceded and took with her the instruments prepared in due form; that the instruments were prepared here by Asher Marks in the form signed, except as to the words, "with condition that one thousand dollars ($1,000) with legal interest be paid to Dan. Aurbock of Dobrzhyn," which were added by the vendor before executing them. After the execution of the deeds and bill of sale they were deposited with the United States consul in Russia, to be delivered to Herman Marks upon the payment of the $1,000, as specified. Six days after placing the instruments with the consul, Krotki died, after which the grantee received notice of the deeds having been deposited with the United States consul, and was informed of the conditions prescribed for their delivery. The vendee at first refused to pay the $1,000, insisting that Aurbock was not an heir and not justly entitled to the money. After a delay of nearly one year, during which time he refused to remit the sum required to Aurbock, the money was forwarded to the consul, on the receipt of which the deeds and bill of sale were sent to the grantee.

3. It is maintained by the defendants that it was understood, before the instruments were prepared and taken to Russia for execution, that $1,000 was to be paid to Aurbock, and that, it having been fully understood, and the deeds and bill of sale duly executed and placed with the consul, to be forwarded to the grantee, before the death of the grantor the title passed as of the date of the delivery of the instruments to the consul, citing *Hoffmire* v. *Martin*, 29 Or. 240 (45 Pac. 754), with authorities from other states, in support of this position; but, whatever the correct rule under such a state of facts may be, it can have no application here, for the contention of defendants on this point is not only rebutted by the great preponderance of the testimony adduced by plaintiff, but also unsupported by the evidence offered on behalf of the defendants. When inter-

rogated concerning this feature of the case, Rachel De
Bow testified that she met Asher Marks in Portland, at
her son's residence, three days after her arrival there;
that he called three or four times, whereupon it was
agreed that she would return to Dobrzhyn, Russia, and
have her father execute the papers prepared by Asher
Marks.   She further testified:

"Q. Was there anything said at any of the meetings
between yourself and Asher Marks at Portland about
the $1,000 to be paid to Daniel Aurbock under said au-
thority or direction in writing from said Zulkind Krotki
which you took to Portland with you and showed to
Asher Marks, and, if so, what was said about it?

A. In that respect, Asher Marks asked me once for
what reason Daniel Aurbock, being no heir, had to re-
ceive the sum of $1,000.   I answered that he had to
receive it according to the wish of Zulkind Krotki, who
loved him (Daniel Aurbock) for his having nursed him
during his illness; but Asher Marks did not agree and
promised to pay said sum of $1,000 in my hands.

Q. Was there anything said at any of said meetings
in Portland about any advances of money on your share
in said estate of Samuel Marks, deceased, and, if so, at
which of said meetings, and what was said about it?

A. At one of those meetings, Asher Marks promised
that, after having received the papers with Zulkind
Krotki's signature, he would send such sum of money
for division as advance, that therefrom would be de-
ducted out of my share the sum of $1,000 for Daniel
Aurbock.

Q. State, if you know, whether said $1,000, due to
Daniel Aurbock under said authority or direction in
writing, or said amount of money advanced on your
share of the estate of Samuel Marks, deceased, or either
of them, were ever paid or advanced, and, if so, state
when and under what circumstances?

A. Still before Asher Marks having received the pa-
pers with the signature of Zulkind Krotki, Herman
Marks sent from America through the American Con-
sulate at Warsaw, to my order, the sum of $1,000, as
an advance on my share, which I duly received and paid
in full to Daniel Aurbock.

Q. State, if you know, whether or not said Zulkind Krotki ever received any money or property, or other consideration from Asher Marks, or the defendant, Herman Marks, or from any other person for or on account of his interest in the estate of Samuel Marks, or for said bill of sale or deed or either of them, and, if so, when, and how much, and from whom?

A. For or on account of his interest in the estate of Samuel Marks, or for said bill of sale and deed, Zulkind has never received any money, property, or consideration either of Asher Marks or of Herman Marks, or of any other person.

Q. State, if you know, whether or not the defendant Herman Marks ever paid or advanced any money or property or other thing of value in the course of or on account of any of the transactions you have mentioned, and, if so, when, how much, and to whom?

A. As aforesaid, Herman Marks sent only, to my order, the sum of $1,000, through the American Consulate at Warsaw.

Q. State, if you know, whether said Zulkind Krotki left any estate at his death, and, if so, of what did it consist, and what did it amount to?

A. After the death of Zulkind Krotki, remained positively no estate."

It thus appears from Mrs. De Bow's testimony that this $1,000, when paid, should come out of her share of the property, thus requiring her to pay the sum, and not the grantee. This theory is supported by the circumstance that she did finally receipt to Herman Marks for the money which she subsequently paid to the party designated in the deeds. The receipt given reads:

"I, the undersigned Rachel Dybow, from Doberzyn, near Drueacan, I receiving from the hands of the Hon. Consul of the United States, in Warsaw, the sum in cash of ($1,000) one thousand dollars, as a part which falls to me and owing to me from Herman Marks of Roseburg, Oregon, in United States of America, after the death of Zulkindzn Krutkim, from Doberzyinia. I reserve the right in future to obtain the inheritance above mentioned. Warsaw, 3d December, 1895.

Witness : Mariam Wolowsky.        Ruchla X Dybow."

Daniel Aurbock also executed a receipt for the same sum, relinquishing any further claims in the matter. The letters from Asher Marks to Rachel De Bow also indicate that it was understood he was to receive the deeds and bill of sale before any money should be paid, and that he would send the money as soon as he received the papers, but not before.

Adolph Marks, who was present and acted as interpreter during the conversation between Mrs. De Bow and Asher Marks, *inter alia*, testifies:

"Q. Was anything said about the payment of this $1,000 to Daniel Aurbock between the time of filing this petition on August 19, 1895, and the time the county court made an order denying it on January 11, 1896?

A. It was previous we had a conversation in regard to Daniel Aurbock. He is a son-in-law of my sister's. In the papers he had to go to Warsaw once or twice in regard to those, to see the consul. It seems like father made in the papers he sent before with my sister that he was to get the first $1,000, and the others to divide up, and Asher was determined, and I understand that Daniel Aurbock should not get a cent.

Q. What did Asher say about it?

A. He was not any more angry than I was. He says: 'He shan't get it.' And I says: 'That is right, Asher. He has no right to that $1,000 at all.' We had several conversations in regard to Daniel Aurbock.

Q. How many times did you ever hear Asher Marks say that Daniel Aurbock should not get any $1,000, or any part of it?

A. I cannot enumerate them, several times in conversations that we had, and I sanctioned with him that Daniel Aurbock should not get it.

Q. State whether or not you heard him make this statement after the 13th day of September, 1894, and before the papers came.

A. Oh, yes, at different times."

These statements are in effect supported by many of the facts and circumstances surrounding the transaction. In fact, an examination of the entire record so clearly demonstrates that no understanding or agree-

ment, either expressly or impliedly, was entered into prior to the execution of the deeds, to the effect that the $1,000 specified therein was to be paid either as a part of the consideration therefor or as a part of the moneys to come out of the general fund belonging to the heirs, as to leave but little, if any, doubt on the question. The question then arises: Is a deed executed under such circumstances sufficient to convey any interest of the grantor? It is the general rule that, where a deed is executed and placed in the possession of a third person for delivery to the grantee without the grantor reserving to himself any control over it, and it is delivered accordingly, the title will pass to such grantee at the time of the last delivery, even though not delivered to him until after the grantor's death (*Hoffmire* v. *Martin,* 29 Or. 240, 243: 45 Pac. 754); and if necessary for the purpose of protecting the grantee from intervening rights, or when either justice or necessity requires, the title relates back to the date of the first delivery: 16 Cyc. 588; *Shirley's Lessee* v. *Ayers,* 14 Ohio, 307 (45 Am. Dec. 546); *Whitfield* v. *Harris,* 48 Miss. 710; *McDonald* v. *Huff,* 77 Cal. 279 (19 Pac. 499); *Dettmer* v. *Behrens,* 106 Iowa, 585 (76 N. W. 853: 68 Am. St. Rep. 326); *Van Tassel* v. *Burger,* 119 App. Div. 509 (104 N. Y. Supp. 273); *Nolan* v. *Otney,* 75 Kan. 311 (9 L. R. A., (N. S.), 317). But the defendants are not in a position to avail themselves of this rule, for the written instruments, through which title to the property involved is asserted, were deposited upon condition that they should not be delivered unless the grantee named therein should first pay to Daniel Aurbock $1,000, to which added condition the grantee had not assented at the time of the grantor's death. This provision is not only contained in the deeds and bill of sale deposited with the consul, but is in accordance with the direction of the grantor, as evidenced by the fact that the consul refused to deliver

the papers until this condition was first complied with.

It will be remembered that, when the deeds were drawn and delivered to Rachel De Bow, the requirement that $1,000 should first be paid to Aurbock was not included therein, and that, while the subject was mentioned, this sum was not to come out of the general funds . of the estate, or out of the grantee's interest therein, but was to be paid out of her share. To this feature Zulkind Krotki refused to accede and deposited the deeds with the requirement that this sum should first be paid direct to Aurbock, and at the time of the execution of the papers and delivery· to the United States Consul, the vendee had not agreed to this new proposition, and did not consent thereto until about one year after Krotki's death, and, as indicated by the testimony quoted, declared he would not do so, and, as further shown by his letters to Mrs. De Bow, he had at all times demanded that the deeds be first turned over to him before the payment of any money thereon, all of which he had indicated he was to pay to her as an advancement on her share of the estate out of which she was to pay Aurbock.

4. The binding force and effectiveness of a deed must necessarily depend upon the mutual assent of the parties to it, without which there can be no delivery: *Tyler* v. *Cate,* 29 Or. 515, 521 (45 Pac. 800).

5. The vendor when depositing a deed can, without awaiting the vendee's consent, annex such conditions thereto as he may see fit (*Walkins* v. *Sommerville,* 80 Vt. 48: 66 Atl. 893), and the vendee is entitled to a delivery thereof only upon a strict compliance with the requirements constituting the conditions precedent to the transfer of the title: *Hilgar* v. *Miller,* 42 Or. 552, 556 (72 Pac. 319).

6. The tender of the papers through the consul, for delivery on condition that the requirements there expressed be first complied with, was such an offer as

could have been withdrawn by Krotki at any time before the acceptance by the grantee of the terms offered, and in this manner he could, at any time before the acceptance, have prevented the delivery of the instruments, and, while no particular formalities are essential to constitute a proper delivery, it is necessary that the grantor should expressly or impliedly consent thereto: *Swank* v. *Swank,* 37 Or. 439, 442 (61 Pac. 846). This privilege, however, was intercepted in this instance by his unforeseen death six days after the papers were delivered to the consul. In this respect the transaction is unlike one where all the terms and conditions are agreed upon, understood, and consented to, between the parties, before the death of the grantor, in which class of cases the deed has been held sufficient to transfer the title, even though the death of the grantor occurred before the actual delivery of the instruments to the grantee: *Lindley* v. *Groff,* 37 Minn. 338 (34 N. W. 26); *Dettmer* v. *Behrens,* 106 Iowa, 585 (76 N. W. 583: 68 Am. St. Rep. 326); *Bronx Inv. Co.* v. *Nat. Bank,* 47 Wash. 566 (92 Pac. 380); *Van Tassel* v. *Burger,* 119 App. Div. 509 (104 N. Y. Supp. 273).

7. In the case under consideration, the minds of the contracting parties had not met at the time of the vendor's demise, leaving at his death no agreement between them. His power to contract and to offer to convey the legal title either in trust or otherwise ended, accordingly, at the moment of his demise: Bishop, Contracts (2 ed.), § 588. The power to recall the instruments before acceptance of the new condition annexed to them having been with the grantor, of which power he was, through no fault of his own, deprived before acceptance of his proffered terms, the subsequent acceptance thereof was ineffectual: Bishop, Contracts (2 ed.) §§ 78, 79; 13 Cyc. 565, 569; *Taft* v. *Taft,* 59 Mich. 185 (26 N. W. 426: 60 Am. Rep. 291); *McIntyre* v. *McIntyre,* 147 Mich. 365 (110 N. W. 960); *Stockwell* v. *Williams,*

68 N. H. 75 (41 Atl. 973); *Soward* v. *Moss,* 59 Neb. 71 (80 N. W. 268); *Byars* v. *Spencer,* 101 Ill. 429, 433 (40 Am. Rep. 212); *Campbell* v. *Thomas,* 42 Wis. 437 (24 Am. Rep. 427, 434). No other conclusion is deducible, unless the instruments through which title is asserted by defendants can be held testamentary in character; but we think it clear that they can have no effect as a testamentary disposition of property, as there is nothing in the record indicating that it was thus intended: *Sappingfield* v. *King,* 49 Or. 102 (89 Pac. 142); *Taft* v. *Taft,* 59 Mich. 185 (26 N. W. 426: 60 Am. Rep. 291); *Emmons* v. *Harding,* 162 Ind. 154, 162 (70 N. E. 142); *O'Day* v. *Meadows,* 194 Mo. 588 (92 S. W. 637: 112 Am. St. Rep. 542).

8. The provision for the payment of the money specified in the deeds was clearly intended as a condition precedent to the delivery thereof. The consul, although in one sense intended as the agent of both parties, until the acceptance by the grantee of the conditions under which the papers were to be delivered, was the agent only of the grantor (*Soward* v. *Moss,* 59 Neb. 71: 80 N. W. 268), and was acting in that capacity for the purpose of enforcing a full compliance with the terms upon which the delivery was to be made before permitting the title to pass. This agency, not being coupled with an interest, necessarily ceased on the death of the principal (1 Am. & Eng. Enc. Law (2 ed.), 1222), and the force and effect of the instruments deposited with him by the decedent terminated with such agency. Taking, therefore, the view most favorable to defendants, under the facts disclosed, the instruments through which defendants claim title to the realty and personalty are void and of no effect, and no title to any interest of Zulkind Krotki, deceased, in either the real or personal property involved, has passed to Herman Marks. The estate must, accordingly, be distributed among the heirs as

if no transactions had been had or papers executed between them.

Again, we are constrained to hold, after a careful examination of the evidence adduced, that it was the intention of all concerned, and was so insisted at the time the papers were prepared and signed by Krotki and placed with the consul, that the deeds and bill of sale were intended simply to take the place of the power of attorney first given, with the expectation that it would more conveniently aid in the distribution of the estate. The strong contention of counsel for defendants, however, is upon the claim that the property was purchased outright for an express consideration; but the evidence so clearly supports the theory that the vendor did not so understand the transaction, and the circumstances bearing upon the matter so forcibly point to an intended conveyance only in trust for the purpose of aiding in the distribution of the estate, that we deem a discussion of the evidence bearing on these points unnecessary.

9. Another matter urged in this connection is that the plaintiffs cannot insist upon the deeds being decreed void without returning, or offering to return, the money paid them. In this respect it is claimed by plaintiffs that this money was paid, whatever it may be—the exact amount of which is not clear—as a part of the proceeds to which the heirs were entitled from funds on hand for distribution, and, as indicated in the evidence, we think it clearly to have been intended for that purpose and so understood by all concerned. This places the case in a much different position than appears to have been the status of the cases cited and relied upon by the defense, in which the plaintiffs there sought a cancellation of deeds which were voidable, but not void, while at the same time retaining moneys paid on the purchase price and not intended as an advancement on any interest they may have had in any estate. Here,

so far as appears from the record, plaintiffs are entitled to all the moneys received in part payment on their distributive shares in the estate under process of settlement, and the most that could be said is that it may have been prematurely advanced. Defendants therefore are not injured, for, whether the moneys received were prematurely advanced or not, defendants appear to have retained, and still have in their possession, as administrators, the estate remaining, and the moneys advanced, as indicated by the learned court below, may be deducted from the sums to which each may be entitled on the final distribution of the estate.

10. The $1,000 paid to Aurbock is a matter with which the plaintiffs are not here concerned, for, under the conclusion reached, the payment of this sum was unauthorized, for which plaintiffs are not responsible. It was voluntarily paid by defendants to Aurbock through Rachel De Bow, his agent, for the purpose of procuring possession of void deeds, and any error, whether in fact or in law, committed by them in so doing, is one for adjustment between the person advancing the money and the person receiving it, and if a remedy exists it is against the person receiving the money, and not the plaintiffs. The court found that this item should be included with other sums paid, "for which the estate of Asher Marks is entitled to credit in any future accounting between plaintiffs and said estate," in which finding plaintiffs appear to acquiesce. Neither the plaintiffs nor defendants are therefore in a position to complain as to this holding, for which reason the decree of the court below in reference thereto should not be disturbed.

11. It is next maintained that plaintiffs are barred by laches, in respect to which it is asserted that 13 years have elapsed since the transaction, and nearly 10 years before suit was commenced; that the deeds were

recorded, and Herman Marks was in possession openly
and notoriously, claiming to be the owner of the prop-
erty with full knowledge by plaintiffs, who, by their
actions, led him to believe he was the owner thereof.
But these assertions are not sustained by the pleadings
or proof. The record clearly rebuts this contention.
While Herman Marks denies in his answer any knowl-
edge of the circumstances of the power of attorney
first given, or that Asher Marks had any knowledge or
notice at any time of Krotki's intention or purpose to
have his interest in the Samuel Marks estate distributed
among his children or heirs, or that the power of attor-
ney was executed for that purpose, his testimony, taken
together with other evidence adduced, makes it clear
that he had full knowledge of these facts, and that
Asher Marks had the deeds and bill of sale made in
Herman Marks' name in place of his own only as a
matter of convenience. It is neither alleged nor proved
that Herman Marks entered into possession of, or exer-
cised control or ownership over, the property. Its
entire management and control appears to have re-
mained in the administrators of the estate. In fact, it
is disclosed throughout that the plaintiffs and other
heirs deemed the estate under process of administra-
tion and under control of the administrator thereof,
until after the death of Asher Marks, which occurred
August 31, 1899, after which it was learned by them
for the first time that Herman Marks claimed the prop-
erty under the deeds and bill of sale. This suit was
brought on January 10, 1902, less than two and one-half
years after the death of Asher Marks. The deeds and
bill of sale were executed by Krotki October 10, 1894,
and received by Marks and recorded December 26, 1895,
about seven years before the commencement of this suit,
in place of nearly ten years, as urged, and only since the
death of Asher Marks, less than two and one-half years

from the commencement of the suit, does it appear that
Herman Marks asserted a claim in his own right to the
property, and this claim does not appear to have been
brought to the attention of plaintiffs until within a
short time before the institution of the suit.   The de-
fense of laches is clearly unsupported by any facts
sufficient to justify its application to any feature of
this case: *Wills* v. *Nehalem Coal Co.* 52 Or. 70, (96 Pac.
528; *Harrison* v. *Rice,* 78 Neb. 654 (111 N. W. 594: 114
N. W. 151).

12. It is next argued that the court erred in taxing
the costs against defendants individually, and main-
tained that, since the suit was brought against defend-
ants as administrators, the costs could be taxed against
them only in that capacity.   The general rule is that a
personal representative who sues or defends in any pro-
ceeding which he can bring or defend in such capacity
is not personally liable for costs if he fails in his
contest: 18 Cyc. 1085; 8 Enc. Pl. & Pr. 730.   If the rule
was otherwise, few executors, administrators, or guard-
ians would incur the risk of a suit, and estates would
suffer accordingly by reason of their rights not being
properly enforced: *Smith's Estate,* 11 Pa. Co. Ct. R.
448.   This rule, however, is subject to some excep-
tions, for instance, where it may clearly appear that
the litigant is not acting in good faith, or where
he knowingly and intentionally subjects the oppo-
sition to expenses additional to what otherwise would
be necessary to protect his rights in the controversy,
or where the suit is vexatious or wanton, or known by
him to be groundless: *Taylor* v. *Whitmore,* 35 Mich. 97;
*Hill* v. *Mitchell,* 40 Mich. 389; *Reynolds* v. *Carter,* 32
Ala. 444; *Pennypacker's Appeal,* 57 Pa. 114.   Defend-
ants cite *Fleming* v. *Carson,* 37 Or. 252, 255 (62 Pac.
374) in support of their contention; but while the court
there held that, as a general rule, the costs should be
charged to the trust fund, "either where the suit is

necessary or beneficial to both parties, or where both are in fault," it further observes that where a party has been guilty of misconduct, rendering necessary a resort to legal proceedings, the costs may, as a punishment, be imposed upon one party only, and merely held that, as there was nothing in the record tending to show misconduct on the part of the defendant, the court erred in taxing the costs against him personally.

13. In the case under consideration the court found, in effect, that defendant Herman Marks took the deeds and bill of sale with actual knowledge of the purpose for which they were given, knowing at all times that they were intended to convey to him the title to the property in trust only, and in this finding we concur. It is therefore probable that the costs were taxed against him individually for the reason that it appeared that the defendant named had caused years of unnecessary delay, litigation, and expense to defendants by defending in this suit without first using the care and inquiry which ordinary prudence would have suggested.

14. Since the record strongly tends to support this conclusion, and the taxation of costs are reviewable only for an abuse of discretion, we do not feel justified in disturbing the decree of the court in this respect, and think the same rule as applied by the court below with respect to this defendant is applicable to the costs in this court.

15. But the learned court below evidently overlooked the distinction between Wollenberg's position in this respect and that of Herman Marks. The litigation was made necessary by the acts of Marks, and Wollenberg was a proper defendant, if not a necessary one, and, accordingly, through no fault of his, was made a party defendant. It was proper, therefore, that he should appear and defend in the suit in order that the interests of the estate might be properly guarded, and, the record failing to show bad faith on his part in this respect, he

should not, although unsuccessful, be chargeable individually with any costs of the proceeding. The costs in both courts should be taxed against Herman Marks individually, and against H. Wollenberg in his representative capacity.

With this slight modification, the decree of the court below should be affirmed.

AFFIRMED : MODIFIED AS TO COSTS.

---

Decided October 20, 1908.

## ON PETITION FOR REHEARING.

[97 Pac. 717.]

Opinion by MR. COMMISSIONER KING.

16. Defendants in their petition for rehearing strongly urge as error the affirmance of that part of the decree of the circuit court holding, in effect, that Asher Marks, deceased, was not a member of the partnership of S. Marks and H. Wollenberg. In the preparation of the former opinion we were of the impression that a statement to that effect appeared only in the findings of fact of the court below, all of which are not necessarily sustained by an affirmance of the decree (*Gentry* v. *Pacific Live Stock Co.* 45 Or. 233 : 77 Pac. 115), and accordingly passed the question unnoticed; but our attention is called to the fact that the same statement appears in the decree as affirmed, which feature we inadvertently overlooked, making a consideration thereof necessary.

The issue involving this point is made by the affirmative averments in the answer, but no relief asked in respect thereto; and while this issue, by each of the parties, is treated as one of which a court of equity may take cognizance, we are cited to no authority therefor, and its right to do so is extremely doubtful. The pleadings do not state, nor purport to state, facts sufficient to indicate why the county court, in the exer-

cise of its probate jurisdiction, cannot, in respect to the point urged, afford the desired relief, without which averment jurisdiction thereof cannot be assumed in this proceeding. The question relative to the respective interests of the heirs is not before us. Moreover the fact that plaintiffs are the heirs of Zulkind Krotki, deceased, is not only clearly established by evidence offered on behalf of plaintiffs, but stands unquestioned by defendants. The interest, however, to which each, as such heir, may be entitled in the personal estate of decedent, or proceeds thereof, so long as the estate remains unsettled, can only arise in, and be determined by, the county court on the final distribution of such estate.

17. The title to all realty, upon the death of its owner, passes directly to the heirs of the decedent as tenants in common, subject only to the rights of the executor or administrator to possession for payment of debts: Sections 1147, 1221, B. & C. Comp.; *Clark* v. *Bundy,* 29 Or. 190, 193 (44 Pac. 282) ; *Noon's Estate,* 49 Or. 286, 291 (88 Pac. 673: 90 Pac. 673). But the personal property by operation of law goes to the administrator or executor, in respect to which the county court has exclusive jurisdiction: *Winkle* v. *Winkle,* 8 Or. 193; *State* v. *O'Day,* 41 Or. 495, 500 (69 Pac. 542).

18. The question, therefore, as to what constitutes the personal estate in which the heirs may be entitled to share, including their respective interests therein, is a matter for the county court's determination; and it was not the intention in the opinion that a decree be entered in respect thereto. The purpose intended thereby was to set aside and declare null and void the instruments alluded to; and we understand this to have been the object sought by this suit, as indicated by the averments of the complaint, including the prayer thereof.

The legal effect of our opinion, as well as of the decree to be entered under it, is to leave the status of

the parties with respect to each other undetermined, the adjudication of which reverts to the county court as if no pretended transfers had ever been made by Krotki to Marks, and as if no suit had been brought in respect thereto, holding merely that the instruments here involved are void and of no effect, and directing that they be set aside accordingly.

Other points are also urged in the petition for rehearing, but they were fully considered and determined in the opinion, and after a re-examination thereof we are satisfied with the conclusions there reached.

With this modification, the petition should be denied.
DECREE MODIFIED: REHEARING DENIED.