## SWANK *v.* SWANK.

[ 61 Pac. 846.]

DELIVERY OF DEED.

1. The delivery of a deed is consummated when the control of it passes beyond recall with the consent of the grantor: *Allen* v. *Ayer*, 26 Or. 589, and *Payne* v. *Hallgarth*, 33 Or. 430, cited.

DEED—PRESUMPTION FROM POSSESSION.

2. The possession of a properly executed deed by the grantee creates a disputable presumption of delivery: *Flint* v. *Phipps*, 16 Or. 437, approved.

DELIVERY OF DEED THROUGH AGENT.

3. The giving of a deed by the grantor, after signature and acknowledgment, to one employed by the grantee to prepare it and take the acknowledgment, without direction regarding its custody or disposition, constituted a sufficient delivery thereof, though not given to the grantee till after the grantor's death, since such employment by the grantee constituted the person employed his agent, and delivery to such agent was delivery to the principal.

DEED—EVIDENCE OF MENTAL CAPACITY.

4. Evidence that a grantor's physician on the day a deed was executed considered his mind remarkably clear for one who had suffered so long, and a clergyman who visited and talked with him frequently prior to that day and afterward until his death thought him always perfectly rational, and that such grantor's wife signed the deed at his request while she was feeling as well as usual, in order to stop his worrying, shows mental capacity and knowledge of the transaction in hand, rendering such parties competent to execute the deed, though for over two months prior to its execution such grantor had suffered much pain, to relieve which morphine had been frequently administered, and his wife was much exhausted by watching and nursing him: *In re Cline's Will*, 24 Or. 175, and *Carnagie* v. *Diven*, 31 Or. 366, applied.

PLEADING AND PROOF MUST CORRESPOND.

5. Recoveries in legal proceedings must be had, if at all, on the grounds stated in the pleadings; a party will not be permitted to recover on a claim or theory that has not been pleaded. Thus, where neither the complaint nor the answer alleged an intention of the parties that a deed and bill of sale sought to be set aside and canceled should be considered as mortgages, but the complaint was predicated on the theory of mental incapacity to execute and failure to deliver the deed, a recovery cannot be claimed on the mortgage theory.

From Linn : HENRY H. HEWITT, Judge.

This is a suit by Mary E. Swank, individually and as administratrix of J. R. Swank, deceased, and others, against Phillip Swank, to remove an alleged cloud from the title to real property, to set aside a deed thereto, and to cancel a bill of sale of personal property. The facts

are that on November 21, 1897, Jay R. Swank was accidently wounded by a gunshot, and on February 3, 1898, having been informed by his physician that he would probably not survive the injury, and advised that if he had any business that needed settlement he ought to give it attention, he on the next day signed a bill of sale, and, with his wife, the plaintiff Mary E. Swank, signed, sealed and acknowledged a deed purporting to transfer and convey to his father, the defendant, Phillip Swank, all the real and personal property of which he was seised or possessed.   Jay R. Swank having died intestate February 8, 1898, his widow was appointed administratrix of his estate ;  and, having duly qualified and entered upon the discharge of her trust, the following claims against said estate were presented to and allowed by her, to wit : Dr. J. P. Wallace, $137 ;  W. E. Chandler, $465 ;  Dr. J. A. Lamberson, $535 ;  Mayer Brothers, $11.50 ;  Hiram Baker, $37.53 ;  Dalgleish & Everett, $35.90 ;  and A. Tenney, $195.

The administratrix, having no means of paying any part of these claims, obtained from the County Court of Linn County an order in pursuance of which she, individually and as administratrix of the estate and guardian *ad litem* of the minor heirs, instituted this suit, alleging, in substance, that J. R. Swank died seised and possessed of said real and personal property, which is of the probable value of $4,000 ; that at the time of his death he was indebted in about the sum of $6,500, and that the funeral expenses and costs of administration had not been paid ; that at and prior to the time said deed and bill of sale were signed her husband was sick, and she was exhausted from sitting up with and nursing him, in consequence of which they were weak in body and mind ; that defendant, without any consideration therefor, prevailed on Jay R. Swank to sign a bill of sale, and induced him and

plaintiff to sign, seal, and acknowledge a deed purporting to transfer and convey to him all the real and personal property of which her husband was seised or possessed; that said pretended deed and bill of sale were never delivered, but were left in the possession of one S. M. Garland, of Lebanon, Oregon, who retained them until after Jay R. Swank's death, when the defendant got possession of them, and without authority caused the deed to be recorded; that the pretense upon which the signatures to said deed and bill of sale were so procured was that in case of Jay R. Swank's death, and not until then, said instruments were to be delivered to the defendant, who would thereupon claim title thereunder and take possession of the property, pay the debts of his said son, and distribute the proceeds of his estate according to the law of descent; that since the death of Jay R. Swank defendant has secured the possession of one thousand four hundred bushels of wheat, the property of said estate, of the value of $1,000, and threatens to take possession of all other property belonging thereto, and to retain the same as his own, refusing to pay the debts of his said son or to make any other disposition of the property of his estate for the benefit thereof, claiming title to the said real estate under said deed, which claim is a cloud upon plaintiff's title thereto. The defendant denies the material allegations of the complaint, and avers in substance that said deed and bill of sale were executed in payment of the sum of $100 which his son owed him, and in consideration of his agreement to pay the sum of $3,196 to Jacob Kees, evidenced by a promissory note executed by Jay R. Swank as principal and himself as surety, and also to pay P. Kester and the Board of School Land Commissioners the sums of $324 and $2,240 due each, respectively, from his said son; that the value of the property so transferred and conveyed does not exceed the sum of

$4,775, while the amount assumed and agreed to be paid therefor is $5,860; that defendant, upon the execution of said conveyance and bill of sale, took immediate possession of the property, and in pursuance of his agreement has paid Jacob Kees on account of said note the amount demanded, and has also paid the interest on the other debts, the payment of which he had assumed. The allegations of new matter in the answer having been denied in the reply, a trial was had, resulting in a decree dismissing the suit, and plaintiff appeals.

                                        AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. H. C. Watson.*

For respondent there was a brief over the name of *Weatherford & Wyatt,* with an oral argument by *Mr. Jas. K. Weatherford.*

MR. JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

1. It is contended by plaintiff's counsel that the testimony shows that it was the intention of the parties that the deed and bill of sale should not be delivered except in case of Jay R. Swank's death, thus evidencing his purpose to retain control of the deed, but that the defendant, without any authority therefor, secured its possession and caused it to be recorded, thereby casting a cloud upon the title to the premises, and hence the court erred in dismissing the suit. The delivery of a deed is a prerequisite to its validity, and, while no particular formalities are essential to constitute such delivery, it is necessary that the grantor should expressly or impliedly consent that the deed should irrevocably pass from his control: *Fain* v. *Smith,* 14 Or. 82 (58 Am. Rep. 281, 12 Pac. 365); *Shirley*

v. *Burch*, 16 Or. 83 (8 Am. St. Rep. 273, 18 Pac. 351); *Allen* v. *Ayer*, 26 Or. 589 (39 Pac. 1); *Hoffmire* v. *Martin*, 29 Or. 240 (45 Pac. 754); *Payne* v. *Hallgarth*, 33 Or. 430 (54 Pac. 162).

2. A properly executed deed, when found to be in the possession of the grantee, creates a disputable presumption that it was delivered to him, and the grantor or his privies who controvert such presumption assume the burden of showing that it was not delivered: 1 Devlin, Deeds, § 294; *Flint* v. *Phipps*, 16 Or. 437 (19 Pac. 543).

3. The testimony shows that S. M. Garland, at defendant's request, went to the house in which Jay R. Swank was staying and took his acknowledgment and that of his wife to the deed, which he took to his office and impressed his notarial seal thereon. Garland, having been called as a witness for plaintiffs, testified in his cross-examination in relation to the deed and bill of sale as follows: "Q. You say you took the papers and laid them away, did you? A. Yes, sir. Q. At Jay's suggestion? A. No, sir. Nobody suggested it. Q. Where did you put them? A. I put them in my office, in the place where I generally kept deeds. Q. You took the papers over to your office for the purpose of putting your seal on them, now, didn't you? A. I took them for the purpose of keeping them safe in case Jay wished to recall them. Q. Did Jay direct you to do that? A. No, sir." On further cross-examination the witness, in answer to the question, "Did some one request you to hold these papers, and, if so, who?" said, "I don't remember, but it seems to me something was said about that by Mr. Perry, but I won't be sure." The person to whom the witness referred is the plaintiff's brother, who is undoubtedly interested in her welfare; but, not being a party to the deed, any suggestions or directions by him to Garland respecting the instruments which the latter had in his possession

were unavailing. While the testimony shows that Garland did not give the deed to the defendant until after Jay R. Swank's death, we think the instrument was delivered at the time it was signed, sealed, and acknowledged, and that Garland took the deed to his office to attach his seal thereto, and not to hold it subject to the will of the grantors; for, having been engaged by the defendant to prepare the deed and to take the grantor's acknowledgment, he was the defendant's agent, so that a delivery to him was in effect a delivery to his principal.

4. It is contended that the court erred in finding, in effect, that Jay R. Swank and his wife possessed sufficient mental capacity to execute the deed in question. The testimony shows that he suffered much pain from the effects of his wound, and to relieve his distress his physician frequently administered morphine, but we do not think the pain he endured or the remedy resorted to for its alleviation affected his mind to such an extent as to incapacitate him from entering into a contract; for his physician, Dr. J. A. Lamberson, admits that he told a person on the day the deed was executed that Jay R. Swank's mind was remarkably clear for one who had been sick so long, and H. B. Ellworthy, pastor of the Methodist Episcopal Church at Lebanon, Oregon, who frequently visited and conversed with him for a week or ten days prior to his death, testified that he always thought him perfectly rational. Mrs. Swank was undoubtedly very much exhausted by her nightly vigil at her husband's bedside, and by her daily care in nursing him and ministering to his comfort, but that she did not have sufficient mental capacity to execute the deed is not borne out by the testimony; for in answer to the question, "What was your condition a week or so before your husband's death?" she said, "I was as well as common,—as well as ever I am." In explaining how she came to sign the

deed, she testified : " My husband asked me if I would
not sign the papers, and I said ' Yes, Jay ; I will do any-
thing to stop worrying you ;' and I signed because I
thought he might stop fretting." It has been repeatedly
held in this state that neither old age, sickness, debility of
body, nor extreme distress incapacitates a party from dis-
posing of his property, if he has possession of his mental
faculties and understands the business in which he is en-
gaged : *Clark's Heirs* v. *Ellis*, 9 Or. 128 ; *Chrisman* v.
*Chrisman*, 16 Or. 127 (18 Pac. 6) ; *Luper* v. *Werts*, 19 Or.
122 (23 Pac. 850) ; *Franke* v. *Shipley*, 22 Or. 104 (29 Pac.
268); *In re Cline's Will*, 24 Or. 175 (41 Am. St. Rep.
851, 33 Pac. 542) ; *Carnagie* v. *Diven*, 31 Or. 366 (49
Pac. 831). Under the rule thus settled, we think the tes-
timony shows that Jay R. Swank and his wife were fully
competent to execute the deed, and knew the nature and
effect of the business in which they were engaged.

5. It is contended by plaintiff's counsel that the an-
swer in effect avers, and that the evidence shows, that
the deed and the bill of sale were executed to secure the
defendant on account of his liability as surety for Jay
Swank on the Kees note, and that, construing the deed
most favorably in the defendant's interest, the property de-
scribed therein should be impressed with a lien to secure
the payments he has made, and that the court erred in
holding, in effect, that the deed and bill of sale were ab-
solute. It is not alleged in the complaint, and we fail
to find in the answer any averment, that the parties in-
tended that the deed and bill of sale should be considered
as mortgages to secure the payment of any sum whatever.
The complaint is predicated upon the assumption that
Jay R. Swank and his wife were mentally incapacitated
to execute a valid contract, and that the deed was never
delivered. The trial court found against the plaintiffs
on both these grounds, which we think was fully war-

ranted by the testimony ; and, the answer not having alleged that the deed or bill of sale was intended as a mortgage, it is now too late to claim that such was the intention of the parties, and the decree is affirmed.

AFFIRMED.

Decided 30 July, 1900.