Argued October 28, affirmed December 14, 1915, rehearing denied January 18, 1916.

## MILLER v. WEAVER.*

(153 Pac. 465.)

**Brokers—Contract to Compensate Loan Brokers for Procuring Loan.**

1. Plaintiffs and defendant executed an agreement in writing wherein plaintiffs were to procure a loan of $5,500 for term of 5 years, with an option of paying $1,000 per year, or the whole amount in 3 years, at 8 per cent secured by first mortgage on the farm owned by defendant, for which defendant agreed to pay plaintiffs $220, and further agreed that if for any reason defendant was unable or unwilling to close said loan, he agreed to pay the said $220 to plaintiffs for their services. Plaintiffs promptly procured the loan and performed all the conditions of such agreement, and defendant refused to

---

*On right of broker to compensation as affected by default of principal, see note in 43 L. R. A. 593.      Reporter.

execute the mortgage as agreed, and plaintiffs thereupon brought this action to recover the $220 agreed on as their compensation. Defendant alleged in his answer that the contract was to become void in case the mortgagee should refuse to cancel his mortgage, in order that a first lien could be given on the land; that said mortgagee refused to release his lien, and plaintiffs were promptly notified of such fact. In view of the record that no testimony was offered tending to show the legal delivery of such agreements to plaintiffs, or facts from which a valid possession of the contract could be inferred, *held* that the verdict of the jury in favor of defendant and the judgment rendered thereon would not be disturbed. (Citing *Hoag* v. *Washington-Oregon Corporation*, 75 Or. 588 [147 Pac. 756].)

> [As to effect of retention by principal of benefit of loan procured by agent without authority, see note in **Ann. Cas. 1913E,** 1115.]

From Union: JOHN W. KNOWLES, Judge.

In Banc.    Statement by MR. CHIEF JUSTICE MOORE.

This is an action by Wm. Miller and A. C. Miller, doing business under the firm name and style of Wm. Miller & Bro., against J. R. Weaver to recover money. The facts are that the defendant purchased from H. Towner a farm near Elgin, Oregon, the title to which was encumbered by a mortgage of $2,000 in favor of the state land board. Weaver, to evidence a part of the purchase price, executed to the vendor a mortgage of the premises for $5,500, with interest, which amount matured in the fall of 1911. Towner at that time demanded payment, whereupon Weaver applied to the plaintiffs, who represented a loan company, to obtain for him a loan, but they were then unable to secure any money, and the defendant was granted another year in which to pay the debt. At the expiration of the extension Towner again required payment, whereupon Weaver once more applied to the plaintiffs to accommodate him, and subscribed his name to a writing, which reads:

"This is to certify that I, J. R. Weaver, the undersigned, of Elgin, Union County, Oregon, do hereby appoint Wm. Miller & Bro., of La Grande, Oregon, my

agents to procure for me a loan of fifty-five hundred dollars for the term of five years, with the privilege of paying $1,000 per year, or the whole amount in three years, at the rate of 8 per cent per annum, said interest to be paid annually; said loan to be secured by first mortgage upon the following described real estate: * * 198 acres. And I hereby agree to pay to said Wm. Miller & Bro. the sum of two hundred and twenty dollars for their services in procuring said loan, and for examining said described property and the title thereto, and for making out the necessary papers, documents, and mortgage; said two hundred and twenty dollars to be payable on demand, and when so paid by me to be payment in full for all services rendered to me in said matter by said Wm. Miller & Bro. And I hereby authorize the said Wm. Miller & Bro. to procure at my expense an abstract of title to said property, and have the same passed upon by their attorney at law, and if upon examination the title to said property is found to be unsatisfactory to said attorney at law, or for any other reason I am unable or unwilling to consummate said loan, I agree to pay to said Wm. Miller & Bro. the sum of two hundred and twenty dollars to compensate them for services rendered in said negotiations; the last-named amount to be paid by me in lieu of said first-named amount.

"Dated at La Grande, Oregon, this 1st day of November, 1912.

"J. R. WEAVER."

The defendant on December 19, 1912, executed to Mrs. Rachel C. McKinnis a mortgage of his farm, and obtained from her money with which the prior mortgages were discharged.

The complaint alleges, in substance, that the plaintiffs, William Miller and A. C. Miller, at all the times stated were and are partners as Wm. Miller & Bro.; that in consideration of the acceptance of such agency the defendant made, executed and delivered to them

the writing mentioned; that they promptly procured for him the loan solicited, examined his farm, accepted the security offered as adequate for the money desired, and performed all the terms specified, except such as were excused by the defendant's refusal to keep his engagement, and they have been at all times ready, able and willing to consummate the loan, but the defendant failed to perform his part, whereby they are entitled to $220 for which sum judgment is demanded.

The answer admits the signing of the writing, but denies all other averments of the complaint. For a further defense it is alleged, in effect, that the defendant subscribed his name to the instrument pursuant to negotiations to obtain a loan upon his farm upon which H. Towner held a mortgage; that unless such encumbrance was canceled a first lien could not be given; that it was agreed the defendant should write Towner and ascertain if a release could be secured upon payment of a part of the mortgage debt, and the written instrument was to become effective only upon his consent to that proposition, without which assent it was agreed the writing was to be void; that defendant immediately wrote such mortgagee, who, replying, refused to release his lien, of which fact the plaintiffs were promptly notified. A motion to make the answer more definite by averring whether or not the alleged agreement whereby the instrument remained inoperative was in writing was denied. A demurrer to the new matter in the answer on the ground that such averments did not constitute a defense was overruled, whereupon a reply was filed controverting the allegations of such new matter. Based on these issues, the cause was tried, resulting in a verdict and judgment for the defendant, and the plaintiffs appeal.

Affirmed.   Rehearing Denied.

For appellant there was a brief and an oral argument by *Mr. Charles A. Small.*

There was no brief or appearance for the respondent in this court.

Opinion by MR. CHIEF JUSTICE MOORE.

It is contended that errors were committed in denying the motion and in overruling the demurrer. It is also insisted that the court erred in receiving, over objection and exception, certain testimony, and in giving and refusing instructions, to which rulings exceptions were taken. These alleged assignments may all be considered under some of the instructions referred to. Thus the plaintiffs' counsel requested the court to charge as follows:

"Gentlemen of the jury, I instruct you that, if you find that defendant delivered to plaintiffs the instrument signed by the defendant, a copy of which is annexed to plaintiffs' complaint, and refused to comply with the terms thereof, and if plaintiffs performed their part of the agreement, you will find for the plaintiffs."

This language was given, with the following addition:

"Unless you find that plaintiffs and defendant entered into the oral agreement hereafter referred to."

Without request the jury were further charged as follows:

"I instruct you that, if you believe there was a parol agreement between the plaintiffs and the defendant that the written instrument introduced in evidence, signed by the defendant, was not to become effective as a contract between plaintiffs and defendant unless one H. Towner should give his consent to defendant giving first mortgage security to plaintiffs as security

for a loan to be procured from plaintiffs, the said
H. Towner agreeing to accept partial payment of the
moneys due him, and take a second mortgage for the
balance, and that Towner refused such consent, then
you shall find for the defendant.''

No brief has been filed by the defendant, nor did he
appear in any manner in this court.  It appears from
an examination of a transcript of the testimony that
the cause was tried upon the issue as to whether or not
the writing was delivered.  This theory is evidenced
by the requested instruction hereinbefore quoted.  The
plaintiffs' counsel, referring to the written instrument,
inquired of his client, William Miller:

"Did Mr. Weaver hand it over to you?"

The witness answered:

"I don't know that he handed it to me; it was signed
on the desk in my presence; was picked up off the desk
by me and folded and put away."

No testimony was offered tending to show that the
writing, after it was signed, was left upon the desk or
elsewhere by the defendant with the intention that it
should be taken by the plaintiffs, so as to have irrevo-
cably passed beyond his control: *Allen* v. *Ayer,* 26 Or.
589 (39 Pac. 1); *Hoffmire* v. *Martin,* 29 Or. 240 (45
Pac. 754); *Payne* v. *Hallgarth,* 33 Or. 430 (54 Pac.
162).  The plaintiffs' possession of the instrument
would undoubtedly have raised a disputable presump-
tion, in the absence of any other evidence, that the
writing had been duly delivered: *Flint* v. *Phipps,* 16
Or. 437 (19 Pac. 543); *Swank* v. *Swank,* 37 Or. 439 (61
Pac. 846); *Pierson* v. *Fisher,* 48 Or. 223 (85 Pac. 621);
*State* v. *Leonard,* 73 Or. 451 (144 Pac. 113, 681).

Though the grantee's possession of a deed, duly exe-
cuted, affords *prima facie* evidence of its delivery,

thereby imposing upon the grantor the burden of disproving an intentional surrender of the sealed instrument, parol evidence is admissible to rebut such presumption by showing that the writing was never delivered: Devlin, Deeds, §§ 294, 295. Instead of relying upon the deduction which the law expressly directs to be made from the mere possession of the writing, the plaintiffs' counsel, as it will be remembered, undertook to supplement the presumption by interrogating his client in respect to the manner in which he secured custody of the instrument, without attempting to prove its legal delivery or to show any facts from which a valid possession of the writing could reasonably have been inferred. By this means the *prima facie* evidence of a delivery was overthrown, and, as there was no other testimony offered upon this subject, the material issue that the defendant "made, executed and delivered to said plaintiffs an instrument in writing." as alleged in the complaint and denied by the answer was not established in the plaintiffs' favor. If William Miller had testified that the defendant, after signing the writing, left it on the desk for the witness, delivery could have been inferred. In order to supplement the presumption adverted to, it must be inferred, from the testimony so quoted, that the writing was left on the desk for the witness, and from such deduction an intention to deliver must also be inferred. This would be founding an inference on an inference, which mode of proof is prohibited: Sections 794, 796, L. O. L.; *State* v. *Hembree,* 54 Or. 463 (103 Pac. 1008); *State* v. *Lem Woon,* 57 Or. 482 (107 Pac. 974, 112 Pac. 427); *Lintner* v. *Wiles,* 70 Or. 362 (141 Pac. 871). It will thus be seen that such presumption was destroyed by the additional testimony. The verdict and judgment may securely rest upon the plaintiffs' failure to prove

a material averment, which disputed fact it was incumbent upon them to establish.

The requested instruction was predicated upon the hypothesis of a delivery of the writing, and the language so employed should have been given without the added clause mentioned. If it can be assumed from the part of the quoted charge given by the court of its own motion that the instrument was in fact delivered, it would necessarily follow that the written obligation became absolute. Such being the case, the extrinsic parol agreement alleged in the answer, providing for a qualification of the writing, was a condition subsequent which did not constitute a defense to the action, and errors were committed as alleged: Section 713, L. O. L.; Wigmore, Ev., § 2435, note 3. But, however this may be, as the certificate of the trial judge shows that there were attached and made a part of the bill of exceptions copies of the entire testimony, the instructions to the jury, exhibits and all other material matters, a careful consideration thereof leads to the conclusion that substantial justice has been administered, notwithstanding any supposed errors: *Hoag* v. *Washington-Oregon Corp.,* 75 Or. 588 (147 Pac. 756).

It follows that the judgment should be affirmed; and it is so ordered.     AFFIRMED.     REHEARING DENIED.

MR. JUSTICE BEAN concurs.

MR. JUSTICE BENSON and MR. JUSTICE McBRIDE concur in the result.

MR. JUSTICE BURNETT delivered the following dissenting opinion.

1. In substance, the plaintiffs allege that about November 1, 1912, the defendant executed and delivered

to them an agreement in writing to the effect that he would pay them $220 on demand if they would procure for him a loan of $5,500 for five years to be secured by a first mortgage upon his land, and that, if upon examination of title to the realty it was found to be unsatisfactory, or if for any other reason the defendant was unable or unwilling to consummate the loan, he would pay plaintiffs the stipulated fee. They further aver performance of the things to be done by them under the contract so far as they could be accomplished but for the refusal of the defendant to do his part, and demand judgment for $220. The answer "denies each and every material allegation in said complaint contained, except admits the signing of the instrument attached to and made a part of plaintiffs' complaint." The defendant's pleading then contains this affirmative statement:

"Defendant alleges that the instrument in plaintiffs' complaint mentioned, designated a contract, was signed by defendant in pursuance of negotiations then and there had between them, whereby defendant applied to plaintiffs for a loan of $5,500, offering as security therefor his farm of about 198 acres situated near Elgin, Union County, Oregon, upon which a mortgage obtained in favor of one H. Towner, and without the release of which defendant was unable to give plaintiffs first mortgage security.

"That thereupon the parties hereto agreed defendant should write said H. Towner and ascertain if he would consent to release his mortgage, and defendant signed said instrument in pursuance of an agreement then and there had between them that the same was to become effective conditioned upon consent as aforesaid being obtained from said H. Towner; otherwise to be and remain void and of no effect.

"That immediately thereafter defendant communicated with said H. Towner, who refused to release his

mortgage as aforesaid, all of which defendant imme-
diately communicated to plaintiffs.''

A general demurrer to the new matter in the answer
was overruled, and the reply traversed it. A jury trial
resulted in a verdict and judgment for the defendant,
from which the plaintiffs appeal.

It will be noted that the defendant says he signed
the instrument upon which the plaintiffs base their
action ''in pursuance of an agreement then and there
had between them that the same was to become effective
conditioned upon consent as aforesaid being obtained
from said H. Towner; otherwise to be and remain void
and of no effect.'' This new matter does not question
the delivery of the instrument. It is an attempt to
ingraft upon it a conditional defeasance. The Stan-
dard Dictionary defines the word ''pursuance'' as:

''The act of pursuing; a following after or follow-
ing out; prosecution; usually in the phrase 'in pursu-
ance of.' ''

As applicable to the instant case, it refers to some-
thing prior to or concurrent with the execution of the
document in question. According to the answer, this
proposed defeasance was agreed upon before the sign-
ing of the contract upon which the plaintiffs declare.
The writing is plain and explicit. There are no am-
biguities in the instrument, either apparent or latent.
In *Ruckman* v. *Imbler Lumber Co.*, 42 Or. 231 (70 Pac.
811), the parties had executed a written memorial of
their stipulation, and afterward, in defense of an ac-
tion at law upon the same, the defendant resisted the
plaintiff's demand by alleging a contemporaneous
parol agreement that the latter would discharge cer-
tain liens on the property involved. Mr. Chief Justice
MOORE, writing the opinion, said:

"The rule is universal that, as between the parties and their representatives and successors in interest, except where an alleged mistake is controverted by the pleadings, or in case the validity of the contract is the fact in dispute, parol contemporaneous evidence is inadmissible to vary or contradict the terms of a written agreement. * * Plaintiff having never stipulated to discharge the liens upon the engine and boiler, there was no ambiguity in the agreement quoted, and the averment in the answer that there was a parol agreement to the contrary was demurrable, and, though issue was joined thereon, it could not be established by parol testimony, and no error was committed in refusing to permit the witness to answer the question propounded to him."

On the demurrer to the answer in this case the precedent just quoted is controlling; for it is manifest from the language of the plea that it is an attempt to incorporate into the contract an additional stipulation contrary to the terms thereof. It is not a case where part of the agreement is in writing and part in parol. In the *American Contract Co.* v. *Bullen Bridge Co.,* 29 Or. 549 (46 Pac. 138), Mr. Chief Justice MOORE quotes with approval the following language from *West* v. *Kelly's Exrs.,* 19 Ala. 353 (54 Am. Dec. 192):

"If the instrument is perfect and complete—that is, if it contains the entire contract—then the rule is inflexible that parol evidence cannot be received to add another term to the written instrument, or to change its legal effect. * * But, if it be apparent that the instrument in writing contains but a part of the agreement entered into by the parties, then parol proof may be received to prove the entire contract; otherwise the contract could not be brought before the court. * * But the parts of the agreement proposed to be proved by parol must not be inconsistent with or repugnant to the intention of the parties, as shown by the written instrument; for, to receive parol proof of a part

not reduced to writing, which is directly repugnant to the intention of the parties, as expressed in the written instrument, would at once annul the rule that parol evidence cannot be received to contradict or vary the terms of a written agreement.''

As throwing light on the question in the instant case, we quote from the testimony. While the defendant was on the stand as witness on his own behalf counsel for plaintiff asked him this question:

''Mr. Weaver, was that agreement you mention that you would borrow the money from Mr. Miller if Mr. Towner would take a second mortgage, was that in writing?

''A. No, sir. I did not sign this agreement until Mr. Miller agreed not to have this in effect unless Mr. Towner did agree to it.

The law is thus stated in Section 713, L. O. L.:

''When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except in the following cases: (1) Where a mistake or imperfection of the writing is put in issue by the pleadings; (2) Where the validity of the agreement is the fact in dispute. But this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in Section 717, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud.''

We remember that this is an action at law. The defendant does not attempt by cross-bill in equity or otherwise to allege a mistake or imperfection in the writing. On the contrary, he explicitly avows the signing of the instrument involved. Neither does he aver any act of fraud on the part of the plaintiffs by which

he was induced to execute the stipulation. In *Portland National Bank* v. *Scott*, 20 Or. 421 (26 Pac. 276), it was held that in an action upon promissory notes, where no illegality or fraud is charged, it is not competent to allege or prove a contemporaneous parol agreement for the purpose of changing, varying or in any manner altering the legal effect of such notes. The defendant there essayed to escape liability by pleading an oral contract said to have been entered into at the time of the execution of the notes between the plaintiff and the defendant to the effect that the former should look to a certain railway company for payment; it having received the entire consideration upon which the notes were made. In *Hindman* v. *Edgar*, 24 Or. 581 (17 Pac. 862), which was an action to recover upon a promissory note and for money due upon a written lease, the defendant resisted the claim on the ground that at the time of executing the lease the parties made a verbal contract to the effect that, if the defendant had certain goods on hand at the expiration of the term, the plaintiff would take them back at an agreed price. The court held that this was not admissible, and that it was error to instruct the jury that the terms of the written contract could be affected or varied by a contemporaneous verbal agreement between the parties. In *Wilson* v. *Wilson*, 26 Or. 251 (38 Pac. 185), Mr. Justice Wolverton wrote to the effect that, where a promissory note was given for a definite sum and made payable on a day certain, it cannot be shown by verbal testimony that it was intended merely as a memorandum, and was not to be paid until the amount thereof could be realized out of a certain business venture. In *Edgar* v. *Golden*, 36 Or. 448 (60 Pac. 2), a suit to foreclose a mortgage, it was urged in defense that the moneys secured were

not to become due nor the mortgage foreclosed until it had been established in an appropriate suit or proceeding that the plaintiff had good and unimpeachable title to the premises. Mr. Justice WOLVERTON reviewed the authorities, and said:

"The mortgage must be presumed to contain all the terms of the contract entered into at the time of its execution, and we must look to it and the notes copied therein to determine the time of the payment, and thus ascertain when the mortgage is subject to foreclosure. The parol agreement, if any, made and entered into prior to or at the time of the execution of such mortgage, cannot be relied upon or used to contradict or vary the terms of such notes and mortgage for the purpose of ascertaining the date of their payment or the time within which such mortgage is subject to foreclosure. So we hold that the evidence offered was incompetent for the purposes for which it was intended; that the notes were due and the mortgage enforceable at the time of the commencement of the suit; and that such parol agreement cannot be used as a hindrance to the prosecution of the suit for the foreclosure of the mortgage."

In *Sutherlin* v. *Bloomer,* 50 Or. 398 (93 Pac. 135), the effort of the defendant was to prove that a certain contract which he set out was intended to be given in full satisfaction of the claim and mortgage mentioned in the complaint; that the written agreement given in the answer was so accepted by the plaintiff, and that, as a consideration additional to the one stated in the written instrument for its execution, the plaintiff agreed to dismiss the foreclosure suit. Mr. Commissioner KING, after stating the ordinary rule against the admission of parol evidence either to contradict, add to, detract from or vary the terms of a written instrument, used this language:

"But it is argued that it is always permissible to show by parol other and additional consideration than that specified in the contract, and that the averments are sufficient for that purpose; and this position is tenable where a monetary consideration is specified: *Burkhart* v. *Hart,* 36 Or. 586 (60 Pac. 205). But in the case before us the consideration specified in the writtén contract consists of certain acts to be performed, and the authorities are * * unanimous in holding that, where the statement in the written instrument as to the consideration is of a contractual nature, as where the consideration consists of a specific and direct promise by one of the parties to perform certain acts, it cannot be changed or modified by parol or extrinsic evidence. A party has a right to make the consideration of his agreement of the essence of the contract, and, when this is done, the consideration for the contract, with reference to its conclusiveness, must stand upon the same footing as its other provisions, and accordingly cannot be affected by the introduction of parol or extrinsic evidence"—citing authorities.

See, also, *Tallmadge* v. *Hooper,* 37 Or. 503 (61 Pac. 349, 1127); *Stoddard* v. *Nelson,* 17 Or. 417 (21 Pac. 456); *Marx* v. *Schwartz,* 14 Or. 177 (12 Pac. 253); *Weidert* v. *State Ins. Co.,* 19 Or. 261 (24 Pac. 242, 20 Am. St. Rep. 809); *Williams* v. *Mt. Hood Ry. Co.,* 57 Or. 251 (110 Pac. 490, 111 Pac. 17, Ann. Cas. 1913A, 177); *Gill* v. *Columbia Contract Co.,* 70 Or. 278 (141 Pac. 163).

It will be observed that the language of the answer is- that the defendant "denies each and every material allegation in said complaint contained." We may well doubt if this constitutes a denial or amounts to more than the traverse of a legal conclusion: *Montour* v. *Purdy,* 11 Minn. 384 [Gil. 278] (88 Am. Dec. 88); *Dodge* v. *Chandler,* 13 Minn. 114 [Gil. 105]; *Pry* v. *Hannibal etc. Ry. Co.,* 73 Mo. 123; *Edmonson* v. *Phillips,* 73 Mo.

57; *Moody* v. *Belden,* 60 Hun, 582 (15 N. Y. Supp. 119);
*Lewis* v. *Coulter,* 10 Ohio St. 451; *Mead* v. *Pettigrew,*
11 S. D. 529 (78 N. W. 945); *Kimball* v. *Stanton* (C. C.),
4 Fed. 325; *New York Coach & Auto Lamp Co.* v.
*Brown,* 82 Misc. Rep. 92 (143 N. Y. Supp. 100).    The
reasons urged against that form of controverting an
allegation are that it is for the court, and not the
pleader, to determine what are material averments,
and that it would be impossible to assign perjury upon
the verification of such an answer, because the affiant
reserves to himself the determination of what is mate-
rial, and hence within the purview of his affidavit.    In
a long course of decisions we have continually held that
no issue is raised by the allegation of a legal conclu-
sion, and it is not apparent why the denial of one should
not be attended by the same result.

Passing this question, however, it is not contended
in the testimony for the defendant that the writing
was not delivered.    He makes no pretense but that he
voluntarily parted with the custody of the writing
which he had signed, and left it with the plaintiffs.    If
the answer challenges the delivery of the instrument,
it does so by the merest technicality, but that question
is not raised in the testimony.    The supreme effort of
the defendant was to incorporate in the written agree-
ment a nullifying contemporaneous parol condition.
The instrument in question was found in the posses-
sion of the plaintiff, from which we presume, under
Subdivision 11 of Section 799, L. O. L., "that things
in the possession of a person are owned by him," and
that the writing had been regularly delivered to the
plaintiffs upon its execution by the defendant.    It is
true that their counsel asked the witness Wm. Miller,
one of the plaintiffs:

"Did Mr. Weaver hand it over to you?"

And he answered:

"I don't know that he handed it to me; it was signed on the desk in my presence; was picked up off the desk by me and folded and put away."

There is nothing in that testimony, however, which would authorize us, as a matter of law, to say that it contradicts a delivery or overcomes the presumption of delivery arising from the possession of the instrument by the party who relies upon it. To hold to the contrary would make it indispensable that in every transaction involving the delivery of an instrument the party executing the same actually should take it into his hands and pass it into the manual custody of the opposite party. This would be a strained and unwarrantable construction to be placed upon any business affair. Neither does the testimony of Miller, quoted above, fall short of tending to prove delivery, because he says nothing about Weaver's intent in the occurrence described. A person may sometimes state his own intent; but no witness can declare the mental purpose which actuates another. The jury alone must determine that from the evidence of acts and statements of the one whose intent is in question.

The plaintiffs requested the court to instruct the jury thus:

"I instruct you that, if you find that defendant delivered to plaintiffs the instrument signed by the defendant, a copy of which is annexed to plaintiffs' complaint, and refused to comply with the terms thereof, and if plaintiffs performed their part of the agreement, you shall find for the plaintiff."

The court, however, modified the request by annexing to it this language, "unless you find that plaintiffs and defendant entered into the oral agreement hereafter referred to," alluding to the agreement re-

lied upon by the defendant in his answer. The modification of this instruction is clearly prohibited by the authorities already quoted, and the plaintiffs had a right to have their theory of the case submitted to the jury without the change noted. The evidence strongly tends to show a delivery of the instrument; in fact, there is nothing in the testimony whatever to dispute that proposition, and the plaintiffs were entitled to go to the jury on the question. Above all, this is not a case where the court should arbitrarily disregard the rules of law announced by the well-considered decisions heretofore rendered by this court, and capriciously say that the verdict for the defendant was right notwithstanding any errors committed by the trial court. There is ample evidence to the effect that the plaintiffs did everything they could in the performance of their contract, and that the defendant refused to perform his part because he found a place where he could borrow the money without paying a broker's fee. It may have been improvident of him to make the agreement in question, but, if he made it and violated it, he should respond to the plaintiffs according to his stipulation. The bill of exceptions discloses a case analogous to instances where a real estate broker employed to find a purchaser brings to the seller a buyer, ready, able and willing to purchase on the terms specified. It has been universally held that in such cases the broker earns his fee, although his employer refuses to continue the transaction and effect the sale.

The judgment should be reversed and the cause remanded for a new trial.

MR. JUSTICE HARRIS concurs in this dissent.