Argued October 10, 1968, reversed January 29, petition for
rehearing denied February 25, 1969

BARTLETT, *Appellant, v.* WHIDDEN,
*Respondent.*

449 P. 2d 850

*Wendell E. Cameron,* Portland, argued the cause for appellant. With him on the brief was William G. Dunlap, Portland.

*James K. Belknap,* Portland, argued the cause for respondent. With him on the brief was Edwin J. Welch, Portland.

Before PERRY, Chief Justice, and GOODWIN, DEN-ECKE, HOLMAN and LUSK, Justices.

## DENECKE, J.

The plaintiff administrator seeks to set aside a deed from his intestate, Floy Barker, to the defendant on the grounds of undue influence and Floy Barker's mental incapacity to effectively convey his property. The trial court found for the defendant and plaintiff appeals.

In 1965 Floy Barker was 90 years of age. He had a home and about $6,000 in a bank account. The plaintiff Bartlett lived next door to Barker and they were good neighbors. Barker's wife died in November 1965. After her death the Bartletts performed many acts of kindness for Mr. Barker. On December 20, 1965, Barker executed a will devising all his estate to the plaintiff and his wife. The will was drawn by his attorney, Mr. Dunlap. The will states Barker had no children, whereas he had four or five children; therefore, the will was ineffective. It does not appear that the children were close to Mr. Barker.

Several years earlier, the defendant, and his mother, had lived in an apartment in Barker's house for 12 years and had become good friends of the Barkers. And, although the defendant moved to another part of Portland in 1957, thereafter he and his mother occasionally visited the Barkers. According to Mr.

Whidden, he visited Barker the day after Mrs. Barker's funeral and Barker said he might sell the house; Whidden told Barker he might be interested, but he did not want to discuss it then. On January 3, 1966, the defendant came to see Barker and Barker said he wanted to give the house to Whidden with Barker reserving the right to live in it the rest of his life. Barker asked Whidden to have Barker's attorney draw up the papers. Whidden went to Mr. Dunlap, but he refused to draft the documents until he had talked to Mr. Barker. When Whidden reported this to Barker, Barker asked if Whidden would have his attorney draw up the documents. Whidden did so and on January 14, 1966, returned to Barker's house with the documents. Barker suggested going to the bank to have his signature notarized; however, the bank was not supposed to open for almost an hour. At Whidden's suggestion, they went to the office of a notary named Kasper who in the past had done Whidden's tax returns and Kasper notarized Barker's signature.

In May 1967, on the petition of Mr. Barker, the plaintiff was appointed Barker's conservator because he was not qualified to handle his affairs properly. In June 1967 plaintifff learned of the conveyance to defendant. Plaintiff testified that when he questioned Mr. Barker, Barker denied signing any deed, or at least did not remember signing it. Mr. Bartlett, as conservator, filed this suit.

Six neighbors of Mr. Barker testified for the plaintiff. Their testimony was generally that Mr. Barker, prior to 1965, had commenced to exhibit signs of senility which were accentuated after his wife's death. Mr. Barker believed after his wife's death that she would come to visit him after dark, leaving in the morning. Mr. Barker's unsanitary personal habits

were also suggested as evidence of senility. In addition, Mr. Bartlett and his wife testified that Mr. Barker repeatedly offered to give them his house and other possessions. The neighbors did testify that on occasion Barker acted rationally. Mr. Dunlap, Barker's attorney, testified that during the period in which Barker executed the deed, Barker at certain times "was competent to handle certain aspects of his business."

According to the defendant, Mr. Barker initiated the proposal of giving his house to the defendant. Mr. Kasper, the notary, testified that Mr. Barker and Mr. Whidden were with him 10 to 15 minutes. Kasper testified that because of the reservation of a life estate, he asked Mr. Barker if he knew what he was doing and Barker said he did; Barker said he was giving his property to Mr. Whidden because he was an old friend. The witness stated that, based on his observation, Mr. Barker appeared to understand what he was doing.

Mr. Barker did not come to the trial. He was living at the time of trial; however, the plaintiff testified Barker was "pretty mixed up, worse than usual now." Several neighbors similarly testified. Mr. Barker subsequently died and the plaintiff was substituted in the capacity of administrator.

The trial court made a specific finding that Floy Barker understood the nature and effect of his execution and delivery of the deed and bill of sale.

We conclude that Mr. Barker lacked sufficient mental capacity to execute the deed and bill of sale.

■■ The criteria to be followed in judging competency are set out in *First Christian Church v. McReynolds*, 194 Or 68, 72-73, 241 P2d 135 (1952):

"The test of mental capacity to make a deed re-

quires that a person shall have ability to understand the nature and effect of the act in which he is engaged and the business which he is transacting. * * *. In the Miller and Legler cases we pointed out that a grantor must be able to reason, to exercise judgment, to transact ordinary business and to compete with the other party to the transaction. In 6 Thompson, Real property (Perm. ed.) 66, § 2982, it is said: "* * * It is not requisite, however, that he should be able to manage his business with judgment and discernment, or in a proper and prudent manner, for many sane men can not do this * * *.' We have repeatedly held that neither old age, sickness, debility of body nor extreme distress incapacitates a party from disposing of his property, if he has possession of his mental faculties and understands the business in which he is engaged. See *Swank v. Swank*, 37 Or 439, 445, 61 P 846, and cases there cited."

■ This is an equity case and we try it de novo. When the evidence is in conflict, however, we give great weight to the trial court's findings. *Dahl v. Clackamas County*, 243 Or 152, 156, 412 P2d 364 (1966). This is not a case, however, in which there is conflicting evidence in the sense that a determination of the facts will depend upon a decision as to the credibility of witnesses. The decision depends largely upon the inferences to be drawn from the testimony.

■ There is one part of the evidence which, taken in the context of the other circumstances, causes us to conclude that the plaintiff has successfully sustained the burden of proving lack of competency. That evidence is Mr. Barker's executing a will on December 20, 1965, leaving his entire estate to plaintiff and his wife and then on January 3, 1966, without any explanatory intervening circumstances, expressing a desire to give his house to the defendant, and soon there-

after executing a conveyance to the defendant. When we consider these uncontested facts in light of the other uncontradicted evidence that Mr. Barker was not rational at all times during this period, the most logical conclusion is that his gift of his house to the defendant was the conduct of a man lacking the requisite mental capacity.

Reversed.