# DILLIN, *Appellant,*
### *v.*
# ALEXANDER et al, *Respondents.*
## (No. 75-885-E, SC 25099)
### 576 P2d 1248

Michael J. Bird of Brown, Hughes, Bird & Lane, Grants Pass, argued the cause and filed the brief for appellant.

Oscar R. Nealy of Myrick, Coulter, Seagraves, Nealy & Myrick, Grants Pass, argued the cause for respondents. On the brief was Donald H. Coulter of Myrick, Coulter, Seagraves, Nealy & Myrick, Grants Pass.

Before Denecke, Chief Justice, Tongue and Linde, Justices, and Richardson, Justice Pro Tempore.

RICHARDSON, J., Pro Tempore.

**RICHARDSON, J.,** Pro Tempore.

This is a suit in equity for rescission of a deed plaintiff and his former wife executed in 1968 in favor of defendants, her two sons by a prior marriage. The deed reserved a life estate in the grantors or the survivor with the remainder to the defendants. Plaintiff and his wife were divorced after execution of the deed. As grounds for rescission plaintiff alleged he was not mentally competent at the time the deed was executed and there was no consideration for the transfer. Plaintiff appeals a decree denying rescission. The former wife, now Virginia Alexander, although included as a grantor in the deed, was not made a party to the law suit.

Plaintiff acquired the property in question prior to his marriage to Virginia. Before the conveyance to defendants here at issue he created a tenancy by the entirety in himself and Virginia. At the time of the marriage Virginia had two sons, the defendants, by a prior marriage, who were emancipated and in the armed forces. Neither defendant lived with the couple but visited them during military leave. There was a good relationship between the plaintiff and the defendants.

Sometime in 1967 Virginia filed a suit for divorce. Plaintiff did not want a divorce and determined, to his satisfaction at least, that if he conveyed an interest in the property to the defendants Virginia would be inclined toward a marital reconciliation. Virginia, in her testimony, denied she had discussed reconciliation and specifically denied she had agreed to return to the marriage if the property was conveyed to her sons. Plaintiff's version was as follows:

> "A. She said if I arranged for the boys [defendants] to get the property upon our death, she would stop the divorce, but she didn't."

In conjunction with the divorce proceedings plaintiff consulted his attorney who had represented him for some years. Plaintiff instructed his attorney to

prepare the deed in question. Plaintiff and Virginia signed the deed on July 16, 1968, in the presence of the attorney who notarized the signatures and then recorded the conveyance. The deed reserved a life estate in the grantors "and for the survivor of the grantors." The stated consideration is "love and affection." Neither defendant was aware of the conveyance until sometime later when their mother discussed it with them. Virginia continued with the divorce action and obtained a decree in December 1968.

Plaintiff was medically discharged from the Army in 1953 due to head injuries and attendant brain damage. He began taking therapy treatment from a psychiatrist in 1967, following the commencement of the divorce proceedings. He continued regular treatment with the psychiatrist until after the divorce decree and then on an infrequent basis until August 1974. The doctor did not testify but his letter report was received in evidence by stipulation in lieu of his testimony. In his report the doctor stated plaintiff was depressed and "tended to be a little paranoid, though not overtly psychotic." He was treated with antidepressants and other medication to allay some of his paranoia. The doctor opined that during the time between the filing of the divorce action and the final decree, which encompassed execution of the deed, plaintiff "had a poor understanding of what went on, he certainly wasn't competent to sign contracts."

The attorney who drafted the deed testified:

"Q. [Defendant's Counsel] Does that mean you are saying that at the time Mr. Dillin was discussing conveying of the property to his stepsons and down to the point of signing it that he did comprehend and know what he was discussing with you?

"A. Well, you would have to say that I thought he did, but whether he did or not is something I am really not qualified to say.

"Q. But I am just asking for a layman's impression.

"A. Well, yes, yes, I would have to say that I thought, in fact, I think he comprehends now and understands these matters quite well.

"* * * * *

"Q. But again, as to the particular document at issue, your testimony is that he seemed to be doing it voluntarily and was conscious of what he was doing when he signed that deed; is that true or not true?

"A. To me, I would say that is the case."

Plaintiff testified it was his intention to have the property pass to his stepsons upon the death of him and his wife and that they be able to use the property during their lifetime. He stated he discussed this intention with his attorney and understood the deed accomplished this result. He further testified he thought he could sell or encumber the property during his lifetime but stated this was not his intention.

Plaintiff first raises an issue of burden of proof. His brief states:

"* * * [O]nce the Plaintiff showed an intimate, confidential relationship to exist between himself and his co-grantor, and spouse, Virginia Alexander, who was obviously acting as the instigator of the conveyance in favor of her children, * * * the burden then shifted to the Defendants to disprove the undue influence and allegation of fraud."

He cites *Legler et al. v. Legler,* 187 Or 273, 211 P2d 233 (1949), and *Patterson v. Getz,* 166 Or 245, 111 P2d 842 (1941), as support for his contention.

The difficulty with plaintiff's argument is that he made no allegation of undue influence or fraud. He alleges only that he was not competent to execute the conveyance and that there was a lack of consideration. We do not, as does the plaintiff, interpret the principle he sets forth to apply in this situation to shift the burden of proof regarding competency. Plaintiff has alleged incompetency and has the burden of proving the allegation. A contracting party whose mental capacity is questionable may be more susceptible to undue influence or fraudulent inducement derived

[ 683 ]

from an intimate or confidential relationship. However, in the absence of an allegation of undue influence or fraud a confidential relationship has little relevance to the issue of mental competence. The capacity the law requires in order to execute a conveyance relates to the condition of the individual and would exist or not apart from any confidential relationship.

In *Legler et al. v. Legler, supra,* in addition to an allegation of incompetence of the grantor, the complaint averred a confidential relationship and undue influence by the grantee in obtaining the grantor's signature on the deed. *Patterson v. Getz, supra,* did not involve the mental capacity of the grantor.

The next contention raised by plaintiff is that the trial court erred in finding he was competent at the time the deed was executed. He argues the uncontroverted report from the psychiatrist establishes he was not capable of making the deed.

Our review is de novo but we give great weight to the findings of the trial court where the evidence is in conflict and where viewing the witnesses is important in resolving the controversy. *Bartlett v. Whidden,* 252 Or 501, 449 P2d 850 (1969). The trial court in a written opinion noted it was not convinced by the doctor's letter opinion that the plaintiff was incompetent. The court found plaintiff's testimony and the testimony of the attorney convincing that plaintiff understood the consequences of his actions and voluntarily signed the deed.

In *Bartlett v. Whidden, supra,* we held:

"The criteria to be followed in judging competency are set out in *First Christian Church v. McReynolds,* 194 Or 68, 72-73, 241 P2d 135 (1952):

" 'The test of mental capacity to make a deed requires that a person shall have ability to understand the nature and effect of the act in which he is engaged and the business which he is transacting. * * *. In the Miller and Legler cases we pointed out that a grantor must be

able to reason, to exercise judgment, to transact ordinary business and to compete with the other party to the transaction. In 6 Thompson, Real property (Perm. ed.) 66, § 2982, it is said: "* * * It is not requisite, however, that he should be able to manage his business with judgment and discernment, or in a proper and prudent manner, for many sane men can not do this * * *." We have repeatedly held that neither old age, sickness, debility of body nor extreme distress incapacitates a party from disposing of his property, if he has possession of his mental faculties and understands the business in which he is engaged. See *Swank v. Swank,* 37 Or 439, 445, 61 P 846, and cases there cited.' " 252 Or at 504-5.

Under this test, we are satisfied that plaintiff was competent when he executed the deed in question. He wanted the property to pass to his stepsons after his and his wife's death, while being able to use the property during their lifetime. The creation of a life estate and a remainder satisfied his purposes. His testimony indicates he was aware of the significance of his execution of the deed and was satisfied at that time with the consequences of his actions.

■ We note also that although the asserted grounds for rescission existed in 1968 the present action was not filed until December 1975. Equity requires some diligence on the part of a person seeking to invoke the court's equitable power to void a conveyance. We get a hint from plaintiff's testimony as to his motivation in seeking to rescind the deed. He testified that although he intended the property to pass to his stepsons he now wanted it returned so it could pass to his sister.

■ Plaintiff's final contention is that the deed should be set aside for lack of consideration. The deed recited the actual consideration was "love and affection." The defendants gave no consideration in terms of money or other thing of value. It is elementary that an interest in real property may be conveyed as a gift without consideration passing to the grantor. *Halleck v. Halleck et al,* 216 Or 23, 337 P2d 330 (1959). Plaintiff had the deed recorded which raises a presumption of

delivery. *Ingersoll v. Ingersoll,* 263 Or 376, 502 P2d 598 (1972); *Reed v. Reed,* 261 Or 281, 493 P2d 728 (1972); *Halleck v. Halleck et al, supra.* It is also presumed, in the absence of contrary evidence, that a donative grantee of a beneficial interest in land has accepted the gift. *Halleck v. Halleck et al, supra; First Nat. Bank v. Connolly,* 172 Or 434, 138 P2d 613, 143 P2d 243 (1943). The requirements for valid gift by deed have been satisfied.

Defendants raise an issue on appeal which must be dealt with. They argue that Virginia Alexander is a necessary party to the law suit.[1] The basis of this contention is that since she held an interest in the property and was a grantor on the deed a decree effecting the property would not determine her interest unless she is a party. We assume defendants refer to ORS 13.110, which reads:

> "In actions or suits the court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a complete determination of the controversy can not be had without the presence of other parties, the court shall cause them to be brought in."

Defendants ask that we remand the case for retrial with Virginia Alexander included as a party.

In light of our determination that the deed should not be rescinded it would serve no purpose to return the matter for retrial simply to include another party.

Affirmed.

---

[1] After the deed was executed Virginia Alexander held the interest of a life tenant. There is nothing in the record to indicate how this property was treated in the divorce decree.