## ALLEN *v.* AYER.

[S. C. 39 Pac. 1.]

1. DELIVERY OF DEED.—To render a deed effectual it must be delivered with the knowledge and consent of the grantor, so that if the grantee, by some trick or other means, obtains possession of a deed not intended to be delivered to him he does not obtain any title thereto.

2. DELIVERY OF DEED—BONA FIDE PURCHASER.*—A *bona fide* purchaser without notice from the grantee named in a deed who had possession thereof, but to whom there had been no valid delivery, acquires no title as against the grantor named in the original deed, in the absence of facts creating an estoppel against such grantor.

3. BONA FIDE PURCHASER—ESTOPPEL.—Plaintiff left a deed to his land with a real estate broker, who was negotiating for the sale of said land, with express instructions not to deliver it without plaintiff's consent. Subsequently the broker, without plaintiff's knowledge or consent, allowed the grantee to take the deed to examine it, and the grantee fraudulently retained and recorded it. The grantee never took possession of the land, and thereafter sold it to defendant. *Held*, that defendant took no title in the land, although he was a *bona fide* purchaser, and that the grantor is not estopped to deny the delivery of the deed.*

APPEAL from Benton: J. C. FULLERTON, Judge.

This is a suit by Morris Allen to set aside and cancel a deed from the plaintiff to one John L. Ayer, and also a deed from Ayer to defendant Long. The material facts, as disclosed by the testimony, are, that in July, eighteen hundred and ninety-three, the plaintiff listed for sale with Judge Chenoweth, who was then doing business as a real estate agent at Salem, a farm in Benton County, upon

---

*The effect of the wrongful delivery and recording of a deed in escrow as to *bona fide* purchasers is the subject of annotation to *Hubbard* v. *Greeley* (Me.), 17 L. R. A. 511. —REPORTER.

which he then, and has ever since, resided, consisting of five hundred and seventy-six acres. A few days thereafter Chenoweth received from Ayer an offer in behalf of an undisclosed principal of forty-five hundred dollars in bonds of the New England National Building, Loan, and Investment Association for two hundred and twenty-seven acres of the land, and, being favorably impressed with the proposition, in company with one Minton, who was interested with him in the proposed sale, drove out to plaintiff's residence, some miles from Salem, to consult him about the matter, but plaintiff refused to make the proposed trade until he could be satisfied of the validity and value of the bonds so offered. However, at the request of Chenoweth, and for convenience in case the trade should be consummated, plaintiff executed and delivered to him a deed for the property, in which Ayer was named as grantee, but with express instructions not to deliver it to Ayer without his consent. Chenoweth returned to Salem with the deed, and a few days afterward Ayer came up from Portland, when he was informed by Chenoweth that plaintiff was unwilling to make the trade without further inquiry as to the bonds, and had instructed him not to deliver the deed until specially authorized. Ayer, however, represented that he was making the purchase for some eastern clients who were becoming impatient at the delay, and asked permission to take the deed to Portland for their inspection, in order to satisfy them that the trade was in progress. Chenoweth, relying upon the honor and integrity of Ayer, consented, but with the express understanding that such consent was not to be deemed a delivery of the deed, but that it was to be returned to Salem, and, with the bonds which Ayer left with Chenoweth, deposited in some bank until plaintiff should determine whether or not he would make a trade. Ayer failed to comply with the agreement, and without

the knowledge or consent either of plaintiff or Chenoweth placed the deed on record in Benton County, and a short time afterwards traded eighty acres of the land for a house and lot in or near Portland to the defendant Long, who claims to be an innocent purchaser for value and without notice. After consummating this trade, Ayer immediately left the state, and has since remained away. The plaintiff had no knowledge of the delivery or recording of the deed, or receipt of the bonds by Chenoweth, until after the sale to Long, and never in any way ratified such sale or acquiesced therein. The bonds which Ayer proposed to exchange for the land proved to have been illegally issued, and, being therefore of no value, were returned to his agent before this suit was commenced. The trial court made no findings of fact, but entered a general statement on the journal that the equities were with the plaintiff, and rendered a decree granting the relief prayed for.                          AFFIRMED.

*Mr. W. Y. Masters*, for Appellants.

There is no attempt to controvert the claim that appellants were purchasers in good faith for value from defendant Ayer of the land in controversy. According to the allegations of plaintiff's complaint, he and his wife signed and acknowledged the deed to Ayer and "sent F. A. Chenoweth, who was plaintiff's agent, to Salem with the deed." Chenoweth, while holding the deed at Salem as plaintiff's agent, according to the allegation of the complaint, intrusted it to Ayer on July eleventh, eighteen hundred and ninety-three, to take to Portland to show to his friends, with the understanding that he would return it to Chenoweth at Salem at once. Ayer did not return it, but placed it on record on July twelfth, eighteen hundred and ninety-three, and on July twenty-sixth, eighteen hun-

dred and ninety-three, sold eighty acres of the land to the defendant Long, who had no notice of the way in which Ayer obtained the Allen deed, and purchased the land in good faith, for value, after having an abstract of the record made showing a perfect title to the land in Ayer. The acts of Chenoweth, the agent of Allen, are the acts of Allen, and he is estopped by placing it within the power of Ayer to show a good record title to the land in himself to deny the delivery of the deed as against the defendant Long. It is an elementary proposition of equity that where one of two innocent parties must suffer loss, the one through whose act or fault the loss occurs must bear it. And, again he who trusts most must suffer most: 2 Pomeroy's Equity Jurisprudence, § 803 (1st ed.); Herman on Estoppel, § 979 (1886); Bigelow on Estoppel, § 561 (5th ed.); *Velsian* v. *Lewis*, 15 Or. 539–549; *Haven* v. *Kramer*, 41 Ohio, 387; *Quick* v. *Milligan*, 108 Ind. 419; *McNeil* v. *Jordan*, 28 Kas. 9; *Blight* v. *Schenck*, 10 Pa. St. 293, 294; *Pratt* v. *Holman*, 16 Vt. 530; *State* v. *Matthews*, 44 Kas. 596; *Lawrence* v. *Guaranty Company*, 32 Pac. 318; *Cowdrey* v. *Vandeburgh*, 10 U. S. 576; *Robenson* v. *Justice*, 21 Am. Dec. 407; *Somes* v. *Brewer*, 13 Am. Dec. 417, 418. Had Allen been actually occupying the land in dispute, his possession would not have been notice of any claim inconsistent with his recorded deed: *Exon* v. *Dancke*, 25 Or. 110; *McNeil* v. *Jordan*, 28 Kas. 9. The deed was not held by Chenoweth as an escrow. In every case of escrow there is a contract and privity between the grantor and grantee. The person to whom the deed is delivered is by mutual agreement constituted the agent of both parties: *Wellbom* v. *Weaver et al.* 17 Ga. 275; *Fetch* v. *Bunch*, 30 Cal. 213; *Smith* v. *Tuggle*, 1 Central Law Journal, 67; *Weir* v. *Baldorf et al.* 30 N. W. Rep. 22. There could be no conditional delivery of the deed to Ayer, the grantee; such delivery is absolute by action of law: *Gas-*

*ton* v. *City of Portland*, 16 Or. 255; 5 Am. and Eng. Ency. 858, note 3.

*Mr. F. A. Chenoweth*, for Respondent.

Opinion by MR. CHIEF JUSTICE BEAN.

1.   The two leading questions in the case are, *first*, did the delivery of the deed to Ayer by Chenoweth under the circumstances detailed pass the title; and, *second*, if not, did the defendant Long obtain a title to the eighty acres by his purchase from Ayer without notice of the manner in which possession of the deed was obtained?   It is elementary law that the delivery of a deed by the consent or with the acquiescence of the grantor is essential to pass title: 1 Devlin on Deeds, § 260.   Without such a delivery it is ineffectual, although it may have been executed in due form, spread upon the records, and be in the actual possession of the grantee.   While no specific formalities are necessary to constitute a delivery, it is essential that the grantor must consent, either expressly or impliedly, that the deed shall pass irrevocably from his control. And it is said that "a deed delivered without the knowledge, consent, or acquiescence of the grantor is no more effectual to pass title to the grantee than if it were a total forgery, although the instrument may be spread upon the record": *Henry* v. *Carson*, 96 Ind. 422.   Now in this case there was manifestly no such delivery of the deed to Ayer as would pass the title to him.   It was left with Chenoweth, who was simply a real estate broker, with express instructions from plaintiff not to deliver it until directed by him.   Until so instructed, Chenoweth had no authority to deliver the deed, and it was a mere scroll in his hands, of no more effect than so much blank paper.   When, therefore, Ayer obtained possession without the knowledge or

26 OR.—75.

consent of the plaintiff, no estate passed to him thereby, because the delivery was not only without the assent but against the express will of the grantor; and as his assent is essential to a delivery, and a delivery is necessary to pass title, it requires no argument or citation of authorities to show that Ayer acquired no title by the deed.

2. But it is contended that Long is entitled to protection as a *bona fide* purchaser without notice. We fully recognize the favorable position *bona fide* purchasers for a valuable consideration and without notice occupy in a court of equity; but we know of no case which holds that a party named as grantee in a deed, who obtains possession of it without the knowledge, consent, or acquiescence of the grantor, can convey a title to an innocent purchaser who may have been misled by seeing the deed in his possession or on record, while the grantor remains in possession of the land, unless the grantor has in some way estopped himself from questioning the validity of the deed. This question was presented and decided in *Everts* v. *Agnes,* 4 Wis. 356, 65 Am. Dec. 314. In that case the deed was left with Zettler, with instructions not to deliver it until certain securities should be given by Agnes. Agnes induced Zettler to deliver it without the securities, and, after placing it on record, sold the land to Swift, who was an innocent purchaser for value, without notice. The court held, however, that Agnes obtained no title, and therefore could not convey any by his deed to Swift. The same question was afterwards reconsidered and affirmed in *Everts* v. *Agnes,* 6 Wis. 457. To the same effect are *Harkreader* v. *Clayton,* 56 Miss. 383, 31 Am. Rep. 369; *Henry* v. *Carson,* 96 Ind. 412; *John* v. *Hatfield,* 84 Ind. 75; *Ford* v. *James,* 2 Abb. Dec. 159; *Chipman* v. *Tucker,* 38 Wis. 43, 20 Am. Rep. 1; *Gould* v. *Wise,* 97 Cal. 532. Where the title to land passes, though obtained by fraud, and the deed is therefore voidable, ono who purchases from the grantee

in good faith, and without notice, will be protected because he had a title which he could and did convey, but when the deed was never in fact delivered, the grantee can convey no title for the protection of which the plea of a *bona fide* purchaser can be invoked. It necessarily follows that Long obtained no title, because Ayer had none which he could convey.

3. Nor is there any room, under the facts in this case, for an application of the doctrine of estoppel. It would be unreasonable and at variance with the facts to impute a want of diligence to the plaintiff, or negligence in depositing the deed with Judge Chenoweth to await the result of his inquiry concerning the bonds offered by Ayer. He and his wife resided in the country, probably several miles from an officer authorized to take acknowledgements of deeds, and he and Chenoweth both were satisfied that the inquiry would result favorably as to the validity and value of the bonds, and the trade ultimately be consummated. Under these circumstances it was but natural that the deed should be prepared and executed ready for delivery while Chenoweth and Minton, who was a notary public, were at plaintiff's residence; and certainly negligence cannot be imputed to the plaintiff for that reason, or because he deposited the deed with Chenoweth to await the result of the proposed trade. The plaintiff remained in possession of the property, and was wholly ignorant of the fact that the deed had been delivered or recorded until long after the purchase by the defendant Long, and did not by any act or conduct of his lead the purchaser to do what he would not have otherwise done. There are some authorities which hold that an innocent purchaser from one in possession of land under an apparently perfect title will be protected, although his grantor obtained possession of the deed under which he claims to hold without the knowledge or consent of his immediate ven-

dor.   Of such are the cases of *Quick* v. *Milligan*, 108 Ind. 419, 9 N. E. 392; *Blight* v. *Schenck*, 10 Pa. St. 285, 51 Am. Dec. 478.   But these cases proceed upon the theory that one who suffers another to remain in the actual possession of land belonging to him, under an apparently perfect deed, is estopped from questioning the validity of the title as against an innocent purchaser from the person in possession.   No such question is here presented, because Ayer was not in possession of the land at the time he sold to Long or at any other time, and hence the authorities referred to are not in point.   The decree of the court below is therefore affirmed.          AFFIRMED.