Argued May 26; affirmed July 5, 1933

RAYBURN *v.* BLECHSCHMIDT ET AL.

(23 P. (2d) 550)

*Stephen E. Chaffee,* of Sunnyside, Wash. (Charles A. Hardy, of Eugene, on the brief), for appellants.

*S. M. Calkins,* of Eugene (Calkins & Calkins, of Eugene, on the brief), for respondent.

BAILEY, J.  This suit was instituted by the plaintiff against the defendants, Fred Blechschmidt and May Blechschmidt, his wife, William H. Oliver, Jesse G. Campbell and C. M. Dyer, to have removed clouds from the title to lands owned by plaintiff in Lane county, Oregon, created by defendants' recording a contract of exchange and purported mortgage and deed. From a decree in favor of the plaintiff, the defendants have appealed.

On October 29, 1930, the plaintiff, B. E. Rayburn, entered into a contract with defendants Fred Blechschmidt and May Blechschmidt, his wife, according to the terms of which the plaintiff agreed to exchange approximately 3¼ acres of land free and clear of all encumbrance, in Lane county, Oregon, for a ranch of approximately 60 acres and certain personal property in Yakima county, Washington. The ranch was to be accepted by the plaintiff subject to a mortgage, originally for $6,000, in favor of the Federal Land Bank, which the Blechschmidts were to reduce to $5,100 as of November 1, 1930, and a second mortgage for $2,000, with

interest thereon paid to November 1, 1930, in favor of the defendant Oliver. Possession of the properties was to be delivered as of November 1, 1930. In this exchange defendants C. M. Dyer and Jesse G. Campbell, real estate brokers of the state of Washington, represented both parties to the transaction.

The contract of exchange provided that the parties thereto should "furnish title insurance policy or abstract of title for the first and second properties, respectively, certified to the date hereof, showing marketable title free from encumbrance, except as herein stated, and each party shall have a reasonable time in which to consummate this transaction".

The ranch in Washington was under irrigation. At the time the contract was signed all the potatoes and corn growing thereon had not been harvested. The ranch was further encumbered with delinquent taxes and with assessments and charges connected with the irrigation system. At the time the exchange was entered into neither the plaintiff nor the real estate brokers were fully advised as to all the encumbrances against the property. It was, however, understood by them that it would be necessary for the Blechschmidts to have a sale and dispose of some of their personal property before they could pay off all the liens against the property other than the two mortgages above mentioned. According to the testimony introduced by plaintiff, that sale was to be held within twelve days to three weeks after the date of the contract and the entire transaction was to be closed within three or four days thereafter. Defendants, however, introduced evidence to the effect that it was understood that sixty to ninety days might elapse before the transaction could be closed.

Under date of November 6, 1930, the plaintiff forwarded to the First National Bank of Grandview, Washington, an abstract of title covering his property in Lane county, Oregon, and a warranty deed, with instructions to the bank to deliver the abstract for examination to the Campbell Investment Company (the firm of C. M. Dyer and Jesse G. Campbell), and to hold the deed pending further instructions from the plaintiff as to the delivery thereof. On November 14, 1930, the Blechschmidts forwarded to the plaintiff abstracts covering the 60-acre ranch, and four days later the plaintiff's attorneys rendered their client an opinion thereon to the effect that according to the abstracts the property was subject to a mortgage of $6,000 to the Federal Land Bank of Spokane, a mortgage of $2,000 to William H. Oliver, a further mortgage of $250 to one Gavin, and other liens including taxes and irrigation assessments and tolls exceeding $1,000 in all. These matters were called to the attention of the Blechschmidts by letter dated November 21, and they were asked for a statement showing that the Federal Land Bank mortgage had been reduced to $5,100 as of November 1 and that the amount due on the Oliver mortgage as of that date did not exceed $2,000. The letter also requested that certain other matters affecting the title be cleared up and explained.

The Blechschmidts held a sale of some of their personal property on November 24, but did not realize so much therefrom as had been expected; and the market for hay and potatoes had declined materially, so that the Blechschmidts did not have enough money to pay off the liens and encumbrances against the property necessary to be discharged in order to complete the transaction between themselves and plaintiff. On December 1, Campbell wrote to the plaintiff stating that

Blechschmidt would like to borrow about $1,700 on the property owned by plaintiff in Lane county and included in the transaction, and on the same date Blechschmidt himself wrote a similar letter to the plaintiff. Nothing was said in either of those letters about any understanding with plaintiff that he would make the loan. On December 4 the plaintiff wrote to both Campbell and Blechschmidt, stating that he was unable to make a loan and further declaring that, "I am calling this deal off". Letters to similar effect were written by the plaintiff's attorneys to the defendants Blechschmidt and to the Campbell Investment Company.

On the same date, December 4, the plaintiff's attorneys addressed a letter to the First National Bank of Grandview, Washington, in which they stated that: "It now transpires that he (Blechschmidt) is unable to raise the money to clear the title to that property according to the contract, and we are obliged to drop the deal. We therefore ask that you return us our papers". The bank failed to return plaintiff's deed and abstract for a few days, under the impression that Blechschmidt was making other arrangements to take care of the excess liens.

On December 8, 1930, the Blechschmidts' copy of the contract of exchange was filed by them for record in Lane county, Oregon, and recorded in the deed records of that county.

Under date of December 9, 1930, the defendants Blechschmidt executed a mortgage of $1,700 to the defendant Oliver on the Lane county property, which was on the following day delivered by Blechschmidt to Oliver at the latter's home at Centralia, Washington, at which time Oliver gave the Blechschmidts credit for the payment of $280.42 of back interest on the mort-

gage of $2,000 which he held on their Washington property, and issued to the Yakima county treasurer checks aggregating $678.31 for the payment of taxes and drainage charges, also checks to the Sunnyside Irrigation district for $745.76 for irrigation charges, all with reference to the Washington land owned by the Blechschmidts. These checks were delivered to the respective payees on December 11 and receipts obtained for the various payments.

On December 10 Campbell telegraphed to the plaintiff herein as follows: "Blechschmidt ready to close deal according to contract. Instruct bank to deliver deed". In response to this telegram the plaintiff on the same date telegraphed to the First National Bank of Grandview: "We have Campbell telegram wishing to renew deal. Without retracting our order of recission, you may forward completed abstract, copy of deed, an exact statement of payment of encumbrances, and definite assurance of possession to be delivered. We will then elect whether we will make new deal on same terms". In answer to this telegram the president of the First National Bank on the following day wrote to plaintiff's attorneys stating that he had just had a conference with Campbell and Blechschmidt, and "it seems like unnecessary expense to have the abstract of title continued until the deal is closed, but Mr. Blechschmidt has stated he would bear his portion of such expense". The bank president further stated that he was enclosing a copy of the Blechschmidt deed; that the bank had receipt showing unpaid balance of $5,347.14 on the Federal Land Bank mortgage and an assignment of 60 shares of stock in the Federal Land Bank, of the total par value of $300, from Blechschmidt to Rayburn; that the Grandview bank also had a re-

ceipt showing that the interest on the Oliver mortgage to November 1, 1930, had been paid, and official receipts in its custody evidencing payment of all taxes and assessments shown by the abstract as unpaid; and that Blechschmidt had given assurance that possession could be had by Rayburn as soon as the transaction was closed.

To this communication the attorneys for plaintiff replied that they did not consider the letter of December 11 from the bank president as a compliance with the terms of their telegram or as complying with the terms of the contract, and that the plaintiff did not wish to go on with the deal for the Blechschmidt property without knowing what he was doing. The attorneys again requested the return of the deed and abstract delivered by Rayburn to the bank.

On December 15, 1930, a suit was instituted by the Blechschmidts in the superior court of the state of Washington for Yakima county against Rayburn and the First National Bank of Grandview, to require the bank to deliver to the plaintiffs in that suit the deed and abstract to Rayburn's property in Lane county, and for a temporary restraining order to prevent the bank from returning those documents to Rayburn during the pendency of the suit. On the same day a restraining order was issued and served upon the bank.

In the complaint in that suit the contract of exchange was referred to and it was alleged that the parties to the transaction had deposited with the bank deeds and abstracts to their respective properties and that the plaintiffs in that suit had fully performed the terms and conditions of the contract on their part to be performed and were entitled to the deed and abstract, then held by the bank, for the Lane county property.

There was, however, no allegation in that complaint that the bank held those documents in escrow or as agent for the parties.

Summons was served personally upon the plaintiff in Lane county, Oregon, but no appearance was made by or for him in said proceeding. Later a decree was entered in the Washington case requiring the bank to deliver to the Blechschmidts the abstract and deed to Rayburn's property in Lane county, Oregon, and to forward to the plaintiff in this suit the warranty deed from the Blechschmidts to their property in Washington and the bill of sale of the personal property which was to be transferred by the Blechschmidts to the plaintiff herein under the terms of the contract of exchange.

About November 17, 1930, the plaintiff made, executed and delivered to his brother-in-law, and caused to be recorded, a deed to the Lane county property, and at the same time took a deed from his brother-in-law back to himself. The purpose of this transaction, as explained by the plaintiff, was to prevent the Blechschmidts from obtaining possession of the deed to that property which had been sent to the bank at Grandview, Washington, having the same recorded and conveying the property to a bona fide purchaser. This deed from plaintiff to his brother-in-law was recorded after the exchange contract and purported mortgage had been filed, but before the defendants Blechschmidt had, by order of the superior court of Washington, acquired possession from the bank of plaintiff's deed to the Lane county property.

In April, 1931, the defendant Oliver instituted a suit to foreclose his second mortgage of $2,000 on the Blechschmidt property, and thereafter purchased said property on foreclosure sale. At the time of the

trial of this cause in the circuit court, the period of redemption, for the property sold, had not expired. There was, however, no evidence as to the amount of expense connected with the foreclosure and sale.

This suit was instituted on March 14, 1931. The complaint alleges the making of the contract of exchange, the refusal and neglect of the defendants Blechschmidt to furnish an abstract of title for the Washington property as provided in the contract, and their failure otherwise to comply with the terms of said contract. In their answer the defendants admit certain allegations of the complaint, but deny the allegations as to failure of the Blechschmidts to carry out the contract. As a further and separate answer it is alleged that the plaintiff knew of the different encumbrances against the property in Washington; that the parties to the contract had constituted the First National Bank of Grandview their escrow agent; that the plaintiff, pursuant to said escrow agreement, had delivered the deed and the abstract of title to his property to said escrow holder; and that the defendants Blechschmidt also had delivered to said bank a warranty deed to their property and a bill of sale, and had furnished an abstract of title as provided in said contract. The answer then avers that plaintiff attempted to breach the terms of the contract and that suit was instituted in the state of Washington and a decree entered in favor of the Blechschmidts requiring the bank to deliver to them the deed and abstract for the Lane county property.

██ The first assignment of error is based on appellants' contention that the plaintiff was not, at the time the complaint was filed, the owner of the land involved in litigation, and therefore cannot maintain this suit. This defense was not raised by answer and is founded

entirely on plaintiff's testimony on cross-examination that he had delivered a deed to this property to his brother-in-law, who had recorded it, and that he had received back from his brother-in-law a deed to the same property, but had not recorded it. One of the attorneys for the defendants, referring to this matter at the time this evidence was introduced, said: "I want to let the record show that I am not proposing to claim the defense in this case that the real party in interest is not here. I only wanted that information so I would know. * * * I didn't want to raise that question; just to make that clear that we wouldn't have to try it over again".

There is no merit to this assignment of error. Moreover, the appellants, by the statement of their attorney, have waived this objection.

■ It is contended by the appellants that the decree in the suit instituted by the Blechschmidts in the state of Washington constitutes a complete defense to plaintiff's cause of suit. In support of this contention the argument is advanced that the deed from the plaintiff to the Blechschmidts had been forwarded by the plaintiff to, and remained in possession of, the bank at Grandview, Washington, and that the superior court of that state by restraining the bank from returning the deed to Rayburn acquired jurisdiction to determine whether or not the defendants Blechschmidt had fully performed the contract of exchange and were entitled to the delivery of the deed from Rayburn to them for the Lane county property.

Although the defendants insist that the bank was by understanding of the parties to the exchange agreement made the escrow agent for the parties to that agreement, the evidence fails to support that contention. At the time the attorneys for Rayburn forwarded

to the bank the abstract of title and the deed they stated that, "As soon as we have examined the abstract [referring to the Blechschmidts' abstract] and are satisfied with it, we will then send you instructions as to the delivery of this deed and abstract". In the next paragraph of their letter they stated that in the meantime the abstract was to be delivered to the Campbell Investment Company for examination and returned to the bank as soon as examined. In accepting this deed the bank stated: "We observe from your letter the abstract is to be delivered to the Campbell Investment Company of Grandview for examination and that upon your approval of title instructions will be forwarded as to the delivery of the deed". The exchange agreement between the parties does not refer to the bank or any one else as escrow holder of the deeds to the respective tracts of land, and there is no evidence to support the assertion made by the defendants that the deeds to the respective tracts of land were to be placed in escrow.

The Grandview bank was the agent of the plaintiff exclusively, in reference to the possessoin and delivery of plaintiff's deed to the Lane county property. This instrument, although referred to herein, for convenience, as a deed, would not be effective as a conveyance until delivered by the plaintiff to the defendants Blechschmidt or some one on their behalf. No such delivery was made in this instance. Section 9-705, Oregon Code 1930, provides that: "The execution of a writing is the subscribing and delivering it * * *". *Turner v. Jackson*, 139 Or. 539 (4 P. (2d) 925, 11 P. (2d) 1048). Unless the grantor voluntarily delivers the deed to the grantee or some one for him, or consents to such delivery, no title to the property described in the instrument passes to the grantee in the deed: *Allen v.*

*Ayer,* 26 Or. 589 (39 P. 1); *De Bow v. Wollenberg,* 52 Or. 404 (96 P. 536, 97 P. 717); *Clark v. Clark,* 56 Or. 218 107 P. 23).

"The vendor when depositing a deed can, without awaiting the vendee's consent, annex such conditions thereto as he may see fit (*Walkins v. Sommerville,* 80 Vt. 48; 66 Atl. 893), and the vendee is entitled to a delivery thereof only upon a strict compliance with the requirements constituting the conditions precedent to the transfer of the title: *Hilgar v. Miller,* 42 Or. 552, 556 (72 Pac. 319)". *De Bow v. Wollenberg,* supra.

Under the circumstances in this case the bank could not, without violating the instructions given it, have delivered the deed to the Blechschmidts. And such a delivery would have been ineffective. Since the bank could not voluntarily have made a valid delivery of the deed, it is difficult to understand how an involuntary delivery, by order of a court which had no jurisdiction of the plaintiff, could in any way be more effective.

In *Jennings v. Rocky Bar Gold Mining Co.,* 29 Wash. 726 (70 P. 136), cited by appellants, the plaintiff instituted suit for specific performance of a contract for the sale of stock in a Washington corporation and made both the corporation and the other party to the contract defendants. The certificates for the stock had been issued and were in the possession of the corporation, which was restrained from delivering them to the real defendant, who was served by publication. The court there held that it had acquired jurisdiction to determine the party to whom the stock belonged. That case differs essentially from the case at bar, since the shares of stock involved in that litigation were in a Washington corporation and the court had acquired jurisdiction over the subject-matter by the procedure there

adopted. In the suit brought by the Blechschmidts in Yakima county, the court at no time acquired personal jurisdiction over Rayburn and as it never had jurisdiction over the real property its decree, in so far as it attempted to decide that the Blechschmidts were entitled to specific performance of the exchange contract, was a nullity, 25 R. C. L. 324, § 141, and was not a bar to plaintiff's suit.

The trial court found that the Blechschmidts did not furnish either an abstract of title or title insurance showing a marketable title to their property free and clear of encumbrance except as stated in the contract. With this finding we concur. When the abstracts for the Blechschmidts' property were first furnished to Rayburn they showed many liens and encumbrances against the ranch, other than the two mortgages of $2,000 and $5,100 to Oliver and the Federal Land Bank, respectively, as well as certain defects in the title to the property.

Rayburn had requested that these liens be satisfied and the defects remedied. On December 10, 1930, Campbell telegraphed Rayburn that the Blechschmidts were ready to close the transaction according to the contract and requested Rayburn to instruct the bank to deliver the deed. Apparently Campbell wanted or expected Rayburn to deliver the deed without being furnished the required abstract of title. This Rayburn refused to do, and rightly so, for he was entitled to know, in the manner provided by contract, that the defects in title pointed out by him had been cured and that certain liens had been satisfied. The failure of defendants Blechschmidt to furnish or tender to the plaintiff an abstract of title to their land as required by the contract amounted to a breach of contract on their part. Moreover, according to the proof, the unpaid balance

on the mortgage to the Federal Land Bank was $5,347.14, whereas the contract required it to be reduced to $5,100.

The plaintiff, immediately after the contract was executed, and on November 6, 1930, furnished the Blechschmidts an abstract of title to his property. No objection was ever made by the Blechschmidts that this abstract was not in all respects satisfactory, nor do they contend that it did not show marketable title in Rayburn, free of all liens and encumbrances. On December 4, 1930, when Rayburn learned that Blechschmidt needed some $1,700 to clear his property of liens, he attempted to rescind the contract, claiming that Blechschmidt had already had a reasonable time within which to complete performance. The circuit court found that the plaintiff had fully performed his part of the contract, but that the defendants Blechschmidt had not performed their contract.

■ From the evidence before us, fortified by the findings of the trial court, we hold that the Blechschmidts had had a reasonable time within which to consummate the transaction before Rayburn attempted to rescind on December 4, and that they never, at any time, substantially performed their part of the contract. The Blechschmidts' property needed attention. The sale was to be held as soon as an auctioneer could be obtained and the transaction was to be closed immediately thereafter. In the meantime the price of farm products declined materially, and the Blechschmidts attempted to justify their delay in consummating the sale on the ground that they could not sell their potatoes and corn. This set of circumstances, however, was not in the contemplation of the parties at the time the contract was signed and was not a justification for the delay.

■■ The contention that the defendant Oliver was an innocent mortgagee without notice and for value is

without merit. He knew that the Blechschmidts had only a contract of exchange for the property. He also knew that the contract was to be performed by the Blechschmidts within a reasonable time, and yet he did not attempt to ascertain from any one, except possibly Blechschmidt himself, what had been done to carry out the contract. At the time this mortgage was given Rayburn had notified the Blechschmidts that he would not proceed further with the transaction, due to their delay. The most that Oliver could have acquired was the Blechschmidts' interest, if any, in the land; and since the Blechschmidts did not have the fee simple title thereto, Oliver could not have become a bona fide mortgagee for value and without notice: *Hyland v. Hyland,* 19 Or. 51 (23 P. 811); *Boone v. Chiles,* 10 Pet. 177 (9 L. Ed. 388). Moreover, the defendants have failed, in their answer, to plead that Oliver was a bona fide mortgagee for value and without notice. There is, however, the averment that the Blechschmidts are the owners in fee simple of the land, based on the decree of the Washington court. That decree was entered long after the mortgage was recorded and, as pointed out above, was a nullity so far as the title to the land is concerned.

At the time Oliver took the mortgage from the Blechschmidts on the Lane county property he advanced them approximately $1,400 and in addition credited them with $280 interest on his mortgage of $2,000 on their ranch in Yakima county. All the money thus advanced went to protect the security for this $2,000 mortgage. Later Oliver acquired the property covered by the mortgage, by foreclosure proceedings, subject to redemption.

As we find no error, the decree of the circuit court is affirmed.

ROSSMAN, BEAN, and CAMPBELL, JJ., concur.